|   |   |
|---|---|
| UNITED STATES DISTRICT COURT | |
| DISTRICT OF PUERTO RICO | |

| | |
|---|---|
| COLLEGE OF DENTAL SURGEONS OF PUERTO RICO, | |
| Plaintiff, | Civil No. 09-1209 (JAF) |
| v. | |
| TRIPLE S MANAGEMENT, INC., et al., | |
| Defendants. | |

**OPINION AND ORDER**

Plaintiff, the College of Dental Surgeons of Puerto Rico, moves to remand this case to Puerto Rico's Court of First Instance, arguing that we lack jurisdiction under either of two exceptions to class action diversity jurisdiction, 28 U.S.C. § 1332(d)(4)(A), (B). (Docket No. 143.) The two defendants who initially removed this case, Metropolitan Life Insurance Company and Connecticut General Life Insurance Company ("Removing Defendants"), oppose the motion to remand. (Docket No. 158.) The remaining twenty-two named defendants[1] ("Nonremoving Defendants") move in support of Plaintiff's motion to remand (Docket No. 157), and also reply to Removing Defendants' opposition (Docket No. 159). Plaintiff

---

[1] Triple S Management, Inc.; Triple S, Inc. ("Triple S"); Triple C, Inc.; American Health, Inc.; Auxilio Platino, Inc.; Cruz Azul de PR, Inc.; Delta Dental Plan of Puerto Rico, Inc.; First Medical Health Plan of Puerto Rico; International Medical Card, Inc.; Humana Health Plans of Puerto Rico, Inc.; Humana Insurance of Puerto Rico, Inc.; Medical Card System, Inc.; MCS Health Management Options, Inc.; MCS Advantage, Inc.; Option Health Care Network, Inc.; Preferred Health, Inc.; Preferred Medicare Choice, Inc.; SDM Health Management, Inc.; Mennonite General Hospital, Inc.; MAPFRE Life Insurance Company; MMM Health Care, Inc.; Cooperativa de Seguros de Vida de Puerto Rico; and Asociación de Compañías de Seguros de Puerto Rico, Inc.

replies to Removing Defendants' opposition. (Docket No. 160.) Removing Defendants sur-reply to Plaintiff and Nonremoving Defendants. (Docket No. 161.)

## I.

### Factual and Procedural Summary

Plaintiff asserts nine causes of action arising from Defendants' "common fraudulent scheme designed to systematically deny, delay and decrease payments to dentists" accomplished through contracts of adhesion, manipulation of billing codes, acts of intimidation and coercion, and various unfair business practices. (Docket No. 1-6.) Plaintiff seeks $150 Million in damages and injunctive relief. (Id.) Utilizing the expanded grant of diversity jurisdiction created by the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2 (codified in scattered sections of 28 U.S.C.), Removing Defendants brought this case before us. (Docket No. 1.)

Finding that the proposed class had not been sufficiently defined, we remanded the case. (Docket No. 84.) The First Circuit found this determination to be more properly suited for the class-certification stage and, therefore, returned the case to us. (Docket No. 95.) We then ordered limited discovery and briefing as to the applicability of the "Local Controversy" and "Home State" exceptions to CAFA jurisdiction, see 28 U.S.C. § 1332(d)(4). (Docket No. 101.)

## II.

### Exceptions to Diversity Jurisdiction Under CAFA

The enactment of CAFA expanded diversity jurisdiction for class action suits such that a single party diverse from any of the opposing parties creates federal subject-matter jurisdiction, so long as the amount-in-controversy requirement of five million dollars is

Civil No. 09-1209 (JAF) -3-

satisfied. See 28 U.S.C. § 1332(d)(2). Congress provided two exceptions to this expanded grant of diversity jurisdiction: (1) the "Local Controversy" exception, § 1332(d)(4)(A); and (2) the "Home State" exception, § 1332(d)(4)(B). Under these exceptions, a plaintiff class may move to remand a case to the court from which it originated.

Plaintiffs seeking a remand under either of these exceptions bear the burden of proving, by preponderance of the evidence, their applicability. See In re Hannaford Bros. Co. Customer Data Sec. Breach Litig., 564 F.3d 75, 78 (1st Cir. 2009).

### III.

### Analysis

#### A. "Local Controversy" Exception

Plaintiff asserts that this case falls under the "Local Controversy" exception to CAFA diversity jurisdiction. (Docket No. 143.) Removing Defendants oppose, relying on the disputed meaning of the undefined term "principal injuries" found in § 1332(d)(4)(A)(i)(III). (Docket Nos. 158; 161.)

The "Local Controversy" exception applies where (1) two-thirds of the proposed plaintiff class are citizens of the state where the action was originally filed; (2) at least one defendant is a citizen of the state where the action was originally filed, whose alleged conduct created a significant basis for the plaintiffs' claims, and from whom significant relief is sought; (3) the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed"; and (4) a class action asserting similar factual allegations against any of the defendants has not been filed in the preceding three years. § 1332(d)(4)(A).

Removing Defendants maintain that this phrase is ambiguous and, by reference to CAFA's legislative history, must be defined broadly to require federal jurisdiction wherever a defendant's alleged conduct could have injured people in multiple jurisdictions. They further argue that the alleged billing practices that form the basis of Plaintiff's complaint would have injured dentists contracted by Removing Defendants throughout the United States. Thus, Removing Defendants argue, the "Local Controversy" exception is inapplicable here. Plaintiff argues that because the proposed class consists entirely of Puerto Rico residents and the injuries complained of arise from the breach of contractual relationships governed by Puerto Rico law, "principal injuries" could not have been incurred outside of Puerto Rico. (Docket No. 143 at 14–15.) In Plaintiff's view, the only injuries that should be considered "principal injuries" are those that stem from the breach of contracts under Puerto Rico law between Defendants and the proposed class of dentists. (Docket No. 160 at 6 ("[Removing Defendants' argument] is flawed and clearly misunderstands the central issue regarding the scope of the principal injuries claimed by the PRCDS on behalf of its members.").) In essence, the adjudication of this motion to remand depends on whether "principal injuries" should be confined to the injuries of the proposed class or include potential injuries to others.

We interpret the language of a statute by first looking to the plain meaning of the text. See United States v. DiTomasso, 621 F.3d 17, 22 (1st Cir. 2010). The "plain meaning," however, is informed by the specific context in which the language is used and its context within the statutory scheme as a whole. Simmons v. Galvin, 575 F.3d 24, 35 (1st Cir. 2009) (citing Nken v. Holder, 129 S. Ct. 1749, 1756 (2009)). If the statutory language remains ambiguous after this inquiry, we turn to the legislative history of the statute to determine

Civil No. 09-1209 (JAF) -5-

Congress' intended meaning. In re Pharm. Indus. Average Wholesale Price Litig., 582 F.3d 156, 168 (1st Cir. 2009). "We approach all arguments based on legislative history with significant caution." Saysana v. Gillen, 590 F.3d 7, 16 (1st Cir. 2009).

The dictionary definition of "principal" is "most important, consequential, or influential." Merriam-Webster's Collegiate Dictionary 987 (11th ed. 2003). "Injury" has been defined as "[t]he violation of another's right, for which the law provides a remedy; a wrong or injustice." Black's Law Dictionary 856 (9th ed. 2009). The dictionary definition of "principal injuries" sheds no light on the issue of who must be injured; it is unclear whether this provision considers only the injuries to the proposed class or if it refers broadly to anyone who was injured by the alleged conduct.

We next consider this provision in the context of both the "Local Controversy" exception and the larger statutory scheme of CAFA. When read in the specific context of the "Local Controversy" exception, the intended meaning of the "principal injuries" provision remains ambiguous. In larger context, the term "principal injuries" is not used elsewhere in CAFA, nor does it appear anywhere else in the U.S. Code. We also look to the statute's statement of purpose. Section two of CAFA finds that state courts are "keeping cases of national importance out of federal court" and states that the purpose of the act is to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." Pub. L. No. 109-2, § 2.

Having considered the plain meaning of the "principal injuries" provision and its usage in context, we find its meaning ambiguous. See Kearns v. Ford Motor Co., Civil No. 05-5644, 2005 U.S. Dist. LEXIS 41614, *38–40 (C.D. Cal. Nov. 21, 2005) (noting, in dicta, that

"principal injuries" is facially ambiguous); see also Stephen J. Shapiro, Applying the Jurisdictional Provisions of the Class Action Fairness Act of 2005: In Search of a Sensible Judicial Approach, 59 Baylor L. Rev. 77, 130–32 (2007) (noting with approval the use of extrinsic aids to interpret "principal injuries").  But see Kitson v. Bank of Edwardsville, Civil No. 06-528, 2006 WL 3392752, *10 (S.D. Ill. Nov. 22, 2006) (holding that "principal injuries" is an example of "clear statutory language" meaning the "chief or primary violation of legal rights complained of in a class action").

Because ambiguity remains after an examination of the language and context of the statute, we turn to the legislative history of CAFA to assist in determining Congress' intent. Removing Defendants contend that the Senate Judiciary Committee report on CAFA, S. Rep. No. 109-14 (2005), offers the controlling meaning of the "principal injuries" provision.

> By ["principal injuries"], the Committee means that all or almost all of the damage caused by defendants' alleged conduct occurred in the state where the suit was brought.  The purpose of this criterion is to ensure that this exception is used only where the impact of the misconduct alleged by the purported class is localized. . . . [I]f the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not qualify for this exception, even if it were brought only as a single-state class action.

S. Rep. No. 109-14 at 40.

This committee report, however, is of questionable value in determining legislative intent.  It was published on February 28, 2005, over a week after CAFA was voted on by the Senate and House, and on the same day it was signed into law by the President.  Consequently, the Second Circuit has noted that this report's "probative value for divining legislative intent

is minimal." Blockbuster, Inc. v. Galeno, 472 F.3d 53, 58 (2d Cir. 2007). The Eleventh Circuit has stated that, even though not published until after the vote, the report "was submitted to the Senate on February 3, 2006 [sic]—while that body was considering the bill." Lowery v. Ala. Power Co., 483 F.3d 1184, 1206 n.50 (11th Cir. 2007). It appears, however, that the Eleventh Circuit misread the Congressional Record. While the portion of the Congressional Record cited does state that CAFA was reported without amendment, this seems to refer only to the unamended text of the bill being "reported" out of committee, and not to the actual filing and circulation of the committee report. Support for this conclusion can be found in Judiciary Committee member Senator Leahy's comments in the report itself:

> The circulation and filing of this report occurred after passage of the legislation for Senate consideration of the underlying bill. . . . The Republican leadership's timetable was so short that there was no opportunity to prepare a Committee report before final passage . . . . That this report is being filed after Senate consideration means that it did not serve the principal purpose for which Committee reports are intended.

S. Rep. No. 109-14 at 79.

Others have argued that even if the committee report was not circulated among members of the Senate or House, the report was substantially the same as the report on the previously-defeated CAFA bill of 2003. See, e.g., Stephen Burbank, The Class Action Fairness Act of 2005 in Historical Context: A Preliminary View, 156 U. Pa. L. Rev. 1439, 1444 n.12 (2008). This argument, however, fails when applied to the "principal injuries" provision. The "Local Controversy" exception was created only a few months before the act was passed, as a compromise to garner the votes of several democratic senators; it was not present in the 2003 version of the bill. See 151 Cong. Rec. S1006 (daily ed. Feb. 7, 2005) (Statement of Sen. Orrin

Civil No. 09-1209 (JAF)                                                                                      -8-

Hatch) (explaining the origin of the "Local Controversy" exception as a compromise with Senators Schumer, Dodd, and Landrieu).

As a leading treatise on statutory interpretation notes, "post-enactment statements of legislators on legislative intent have been disapproved. They are of limited legal value to understand the clear meaning and legal effect of statutes." 2A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 48:20 (7th ed. 2007). Where it appears that the Judiciary Committee report was not completed or circulated to the Senate prior to its vote on the bill, we cannot maintain the fiction that it was demonstrative of Congress' intent in passing CAFA. Therefore, we will not accept Removing Defendants' invitation to treat the Senate Judiciary Committee report as controlling authority for the meaning of the "principal injuries" provision.

This committee report does not, however, comprise the entire legislative history of CAFA. The Congressional Record contains two statements from supporters of CAFA that neither party has brought to our attention.[2] During the Senate floor debates, Senator Hatch, a member of the Judiciary Committee and its chairman during most of CAFA's tortuous history, presented the bill and explained the intended meaning of "principal injuries":

> In other words, the total extent of the injuries complained of must be concentrated within the forum State. By way of an example, a nationwide drug lawsuit involving injuries spread throughout the country would certainly not qualify for this criteria. On the other hand, this criteria would be satisfied by a class action lawsuit involving a factory explosion affecting a confined geographic area.

---

[2] We may take judicial notice of legislative history in disputes of statutory interpretation. See, e.g., Adarand Constructors, Inc. v. Slater, 228 F.3d 1147, 1168 n.12 (10th Cir. 2000). District courts have broad authority to consider extrinsic evidence in order to determine their own jurisdiction. Valentín v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).

151 Cong. Rec. S1006.

During the House's debate of the bill, Representative Sensenbrenner, then chairman of the House Judiciary Committee, offered into the record a "statement relative to the intent of the managers of the bill," including a more detailed account of the "Local Controversy" exception:

> [T]his is a narrow exception that has been carefully drafted to ensure that it does not become a jurisdictional loophole. . . . [A] Federal court should bear in mind that the purpose of each of these criteria is to identify a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others. . . . By [principal injuries], the Sponsors mean that all or almost all of the damage caused by defendants' alleged conduct occurred in the State where the suit was brought. The purpose of this criterion is to ensure that this exception is used only where the impact of the misconduct alleged by the purported class is localized. . . . If the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several States (such as an insurance or product case), the case would not qualify for this exception, even if it were brought only as a single-state class action.

151 Cong. Rec. H728 (daily ed. Feb. 17, 2005).

The statement also expressed that "[CAFA's] provisions should be read broadly with a strong preference that interstate class actions should be heard in Federal court if removed by any defendant." 151 Cong. Rec. H727.

While floor statements of individual legislators are generally accorded little weight in determining congressional intent, see, e.g., Blitz v. Donovan, 740 F.2d 1241, 1247 (D.C. Cir. 1984) (citing Weinberger v. Rossi, 456 U.S. 25, 35 n.15 (1982)), statements of bill managers, sponsors, or members of the committee that reported the bill have been treated as probative of intent. See, e.g., United States v. Yellin, 272 F.3d 39, 45–46 (1st Cir. 2001) (holding the

statements of a statute's sponsors as probative of intent); see also Kuehner v. Heckler, 778 F.2d 152, 160 (3d Cir. 1985); 2A Singer & Singer, supra, § 48:14, 15.

Senator Hatch's statement, read in a vacuum, could support Plaintiff's interpretation of the "principal injuries" provision. "[T]otal extent of the injuries complained of" could be construed as referencing only those injuries of the proposed class. The "sponsor statement" submitted by Rep. Sensenbrenner, however, more closely comports with the stated goals of CAFA. It seems unlikely that, in an attempt to remove to federal court a larger number of class action suits that are of "national importance," Congress would create a loophole encouraging attorneys to maintain multiple smaller class actions in state courts. See Shapiro, supra, at 131 ("The exceptions were to be used for truly local controversies, not local subsets of nationwide controversies. There is nothing to keep plaintiffs from dividing up what otherwise would be huge nationwide class actions into individual state actions, but they can't use the local controversy exception to keep them in state court."). The Plaintiff's reading of "principal injuries" would allow whichever plaintiff class first filed suit to evade federal court jurisdiction. Assuming, arguendo, that the "principal injuries" provision focused only on the proposed class' injuries, a drug lawsuit with nationwide injuries—as in Senator Hatch's example—would qualify for the "Local Controversy" exception, so long as the proposed class was limited to citizens of the forum state and the filing attorney won a race to the courthouse. Under this scenario, only successive class actions filed within three years on the "same or similar factual allegations" could be removed to federal court. This absurd result is contrary to both Senator Hatch's statement of CAFA's purpose and also to the purpose statement contained in the statute. For these reasons, we are unable to follow Plaintiff's suggestion to construe

§ 1332(d)(4)(A)(III) to encompass only those injuries alleged by the proposed plaintiff class. Instead, we construe "principal injuries" to include injuries to anyone harmed by defendants' alleged or related conduct.

Removing Defendants assert that the billing practices and contracts complained of by Plaintiff are common to their dealings with dentists throughout the United States. In support, Removing Defendants submit affidavits from their senior management, declaring that each company utilizes a uniform claims processing and billing procedure regardless of where a dental claim originates. (Docket Nos. 158-2 (CGLIC); -3 (MetLife).) Removing Defendants also cite a class action suit alleging similar fraudulent billing practices filed by the American Dental Association against Removing Defendants in the Southern District of Florida.[3] (See Docket No. 1-8, Complaint in In re Managed Care Litig., Civil No. 03-21266 (S.D. Fla. May 1, 2008)). Thus, we find that Removing Defendants' alleged conduct potentially injured individuals throughout several states.

It is not a foregone conclusion, however, that all such potential injuries outside the forum are necessarily "principal injuries." While the legislative history cited, supra, could support that conclusion, this would conflict with Congress' deliberate use of the qualifier "principal." It is only logical to assume from Congress' choice of language that the "Local Controversy" exception anticipates some class of potential injuries outside of the forum that are not "principal injuries." But, we need not resolve this question in the case before us. Even if we assume that not all injuries incurred outside the forum and resulting from defendants' conduct are

---

[3] Plaintiff argues that the three-year provision does not apply here because this suit was originally filed in Puerto Rico court prior to the filing of the ADA's suit. Removing Defendants do not address this argument, and as we decide on other grounds, we need not discuss it.

"principal," in this case Plaintiff fails to offer a persuasive argument differentiating the injuries to the proposed class from the potential injuries suffered outside of Puerto Rico. Plaintiff argues that Removing Defendants' improper billing and claims processing are only a small part of all the injurious conduct alleged in the complaint. Yet, the language of the "Local Controversy" exception precludes an argument that "principal injuries" necessarily arise from a defendant's most consequential conduct. See § 1332(d)(4)(A)(III) (stating that "principal injuries" result "from the alleged or any related conduct of each defendant"). Plaintiff, thus, fails to meet its burden of proving the applicability of the "Local Controversy" exception.

**B.     "Home State" Exception**

The "Home State" exception is available in cases where two-thirds of the proposed plaintiff class and all "primary defendants" are citizens of the state where the action was first filed. § 1332(d)(4)(B).

The parties dispute whether this suit fulfills the second prong of the "Home State" exception, that all "primary defendants" are citizens of the forum state. See § 1332(d)(4)(B). Plaintiff and Nonremoving Defendants concede that the Removing Defendants are not citizens of Puerto Rico but argue that they are not "primary defendants."

The term "primary defendants" is undefined by CAFA and has been the subject of disagreement among the district courts that have considered its meaning.[4] To date, no circuit

---

[4] The district courts are split. About half which have considered the issue found that a "primary defendant" is any defendant who is directly liable, as opposed to liable under some theory of vicarious liability or indemnity. See, e.g., Anthony v. Small Tube Mfg. Corp., 535 F. Supp. 2d 506, 515–17 (E.D. Pa. 2007) (citing Kitson, 2006 WL 3392752, *13–17). The rest have referenced a five-factor test, though it is unclear whether any one factor is dispositive or if a balancing test is employed. See, e.g., Moua v. Jani-King of Minn., 613 F. Supp. 2d 1103, 1107–09 (D. Minn. 2009).

court has addressed this issue. Here, it is unnecessary for us to strictly define the term, since Plaintiff and Nonremoving Defendants have failed to offer a persuasive basis to distinguish Removing Defendants as being secondary to any other defendant. Plaintiff and Nonremoving Defendants attempt to distinguish Removing Defendants based on their relative shares of Puerto Rico's dental insurance market. The record does contain evidence on the total number of insureds and dependents in Puerto Rico who are serviced by Removing Defendants' dental insurance business and also the number of dental insurance customers in Puerto Rico serviced by Nonremoving Defendant Triple-S. (See Docket Nos. 157-1 at 10; 157-8; 157-10.) But the record is devoid of any information as to the total size of the dental insurance market in Puerto Rico or of the shares in this market of the other twenty-one defendants. As a result, we are unable to determine Removing Defendants' market share, much less say that this distinguishes them as secondary defendants.

## IV.

### Conclusion

For the foregoing reasons, we hereby **DENY** Plaintiff's motion to remand (Docket No. 143) and Nonremoving Defendants' motions in support (Docket Nos. 157; 159). A status conference will be held on **February 22, 2011, at 2:00 P.M.,** to discuss any need for pre-certification discovery, schedule briefing on certification, and set a deadline for dispositive motions under Federal Rule of Civil Procedure 12.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 8th day of February, 2011.

s/José Antonio Fusté
JOSE ANTONIO FUSTE
Chief U.S. District Judge