1  UNITED STATES DISTRICT COURT
2  DISTRICT OF PUERTO RICO

3  PUERTO RICO COLLEGE OF DENTAL
4  SURGEONS, on its own and on behalf of
5  its members, et al.,
6
7       Plaintiff,                                     Civil No. 09-1209 (JAF)

8       v.

9  TRIPLE S MANAGEMENT INC, et al.,
10
11      Defendants.

12

13                          **<u>OPINION AND ORDER</u>**

14      Before the court is Plaintiffs' motion for class certification.  (Docket No. 383.)  We ordered

15  the parties to brief the issue of class certification simultaneously to the court.  (Docket

16  No. 396.)   The parties complied with that order and submitted simultaneous briefs.

17  Plaintiffs filed a memorandum in support of class certification, and defendants submitted

18  memorandums in opposition to class certification.[1]  Plaintiffs and a few of the defendants

19  then submitted response briefs.[2]  We have considered the parties' arguments.  For the

20  following reasons, we deny Plaintiffs' motion to certify the class.

---

[1] We received briefs in opposition from Defendants First Medical Health Plan, Inc. and International Medical Card, Inc. (Docket No. 376); MMM Healthcare, Inc. and Preferred Medicare Choice, Inc. (Docket No. 377); Humana, Inc. (Docket No. 379); MAPFRE Life Insurance Company and Mennonite General Hospital, Inc. (Docket No. 378); a joint brief filed by Triple-S, Inc., Triple-C Inc., and Triple-S Management, Inc. (collectively, "Triple-S"); American Health, Inc.; Cruz Azul de PR, Inc.; MCS Advantage, Inc., MCS Management Options, Inc., and Medical Card Systems, Inc. (collectively, "MCS") and Delta Dental of Puerto Rico, Inc. ("Delta") (Docket No. 382); and Metropolitan Life Insurance Company ("MetLife") and Connecticut General Life Insurance Company ("CGLIC") (Docket No. 387).

[2] Plaintiffs submitted a response brief (Docket No. 397), as did Defendants MetLife and CGLIC; Humana; Triple-S; American Health, Inc.; Cruz Azul de PR, Inc.; MCS; and Delta (Docket Nos. 396, 399, 400).

# I.

## **Factual Background**

Plaintiffs are the Puerto Rico College of Dental Surgeons ("College") and nine individual dentists licensed to practice in Puerto Rico.  (Docket No. 169.)  The College is an entity created by the Puerto Rico legislature.  See 20 L.P.R.A. §§ 111-123.  With minor exceptions, every dentist licensed to practice in Puerto Rico must belong to the College. The nine individually-named plaintiffs are dentists who are members of the College and who allegedly "entered into provider contracts with defendants."   (Docket No. 169.) Defendants are twenty-two insurance companies providing dental insurance and other health-care plans in Puerto Rico.

Plaintiffs allege that Defendants have committed a wide-ranging series of actions that breached their dentist provider contracts.   Plaintiffs' allegations are set forth in their amended complaint, memorandum of law in support of class certification, and in a three-page "Summary of Claims" ("Summary") attached to their memorandum.  (Docket Nos. 69, 383, 383-1.)   Plaintiffs' Summary includes one or two-line descriptions of each wrongful practice Plaintiffs allege the Defendants committed.   (Docket No. 383-1.)   In the two columns next to each wrongful practice, Plaintiffs list the total number of claims, as well as the specific insurance companies that allegedly committed each practice.  (Id.)

For example, Plaintiffs' Summary alleges that ten of the defendants engaged in "Retaliation . . . for objections to amendments of clauses to contracts."  (Id. at 1.)  The defendants alleged to have committed this practice are American Health, Cruz Azul, Delta, Humana, MCS, Preferred Health Care, Preferred Medical Choice, Salud Dorada, Triple-S, and IMC.  (Id.)  Each wrongful practice has a different number of claims attached, and

1   corresponds to (mostly) different defendants.  For example, Plaintiffs allege ten claims for

2   "Forcing Dentists to accept audit results under penalty of contract cancellation."  The only

3   defendants alleged to have committed this practice are Delta, MCS and Triple-S.  (Id.)

4   Consistent with this overall pattern, Defendants MetLife and CGLIC are each alleged to

5   have committed unlawful practices that the other did not commit, and vice-versa.  (Docket

6   No. 387 at 4.)

7          Defendants have also submitted affidavits in support of their opposition briefs.

8   Defendants MetLife and Humana argue that this evidence demonstrates the individualized,

9   rather than common, questions relevant to determining Plaintiffs' injuries.   (Docket

10  Nos.  79, 387.)

11          MetLife and CGLIC submitted factual evidence opposing Plaintiffs' motion.

12  (Docket No. 387-1, 387-2.)  In a sworn declaration, Courtney Ransom ("Ms. Ransom"),

13  MetLife's Assistant Vice-President for Dental Products, attests that only two of the named

14  plaintiff dentists—Dr. Noel Aymat and Dr. Norma Martínez Acosta—entered into provider

15  contracts with MetLife.  (Id.)  Ms. Ransom attaches true and correct copies of the dental

16  service agreements entered into with these Plaintiffs.  (Id.)  Ms. Ransom also submits an

17  example of the "explanation of benefits" that MetLife sends to dentists.  These explanations

18  contain the following information: The patient's name, the date(s) of service, the CDT codes

19  the dentist identified on the claim form, the CDT codes MetLife paid or denied, and amount

20  paid per CDT code.   Ransom also includes examples of the table for maximum allowable

21  charges for the years 2000 to 2010; she states that the tables are amended "from time to

22  time."

1      Humana has also submitted factual evidence in opposition to class certification.

2   (Docket Nos. 379, 379-1, 379-2, 379-3, 379-4, 379-5, 379-6.)  The main piece of evidence

3   is a sworn statement made under penalty of perjury provided by Marelli Moro, an employee

4   of Humana. (Docket No. 379-1.)   Moro's statement, which she labels a "supplemental

5   declaration," supplements an earlier declaration that she made in March 2011.   (Id.) In her

6   earlier "declaration," Moro provided true and correct copies of the agreements between

7   Humana and three of the provider plaintiffs: Drs. Noel Aymat, Angel Robles Adorno, and

8   Pedro A. Cheverez-González.    (Docket Nos. 195-1, 195-2, 195-3, 195-4.)    In this

9   supplemental declaration, she provides true and correct copies of the agreements that exist

10  between Humana and three additional provider plaintiffs, including Drs. Thomas Manuel

11  Medina, Isabel M. del Valle Díaz, and Norma Martínez.  (Docket Nos. 379-1, 379-2, 379-3,

12  379-4, 379-5, 379-6.)   Moro also states that, to the best of her knowledge, the remaining

13  provider plaintiffs—Drs. Valmin Miranda Santiago, Jose Mercado Gigliotty, and Ramón

14  Fernando González García—have not entered into Dental Service Agreements with

15  Humana.  (Docket No. 379-1 at 3.)

16      Moro's statement, and the accompanying copies of the agreements, establish that the

17  "provisions of the Dental Service Agreements that Humana and its predecessor companies

18  have entered into with dental providers in Puerto Rico over the last 15 years have varied

19  over time and may also vary from dentist to dentist."  (Id.)  For example, Dr. Martínez

20  entered into a Dental Services Agreement with PCA Insurance Group, a predecessor of

21  Humana, on October 4, 1996.  (Id.)   Another plaintiff, Dr. del Valle, signed a Dental

22  Services Agreement with Humana on January 27, 2011.  (Id.) The contracts that plaintiffs

23  signed with Humana vary in the following ways: Reimbursement amounts for covered

Civil No. 09-1209 (JAF)                                                          -5-

1  services provided under the government-administered health plan; reimbursement amounts

2  for covered services provided under private commercial plans; the time period in which

3  providers must submit claims to Humana; the time periods in which Humana must pay clean

4  claims; the time periods in which providers must respond to requests from Humana for

5  additional information on a claim; and the time periods associated with adjudicating

6  disputes over claims.  (Id.)  Some of the relevant agreements contain arbitration provisions,

7  while others do not.  (Id. at 2.)

8          There are also abundant differences between the contracts offered by different

9  defendants.  For example, MetLife and CGLIC's contracts do not contain arbitration

10 clauses, while some of Humana's contracts do.  (Docket No. 399 at 9.)  The MetLife

11 contracts require providers to submit reimbursement claims within thirty days, while

12 Humana's contracts offer reimbursement periods of either sixty to ninety days.  (Id.)  Some

13 of the named plaintiffs have contracts that contain the sixty-day period, while others have

14 contracts mandating a ninety-day period.  (Id.)

15         In their response brief, Plaintiffs do not challenge any of these facts submitted by

16 Humana and MetLife.[3] (Docket No. 397.)   Plaintiffs present a slew of legal arguments, but

17 do not provide any factual treatment beyond their Summary.

18                                                **II.**

19                                   **Procedural Background**

20         We summarize briefly the trajectory of this case.  Plaintiffs originally filed their

21 complaint in Puerto Rico's Court of First Instance.  (Docket No. 1-4.)  Plaintiffs later

---

[3] Plaintiffs do challenge the assertion by Triple-S that Plaintiffs' counsel has failed to keep dentists and the College informed of conflicts of interest and other litigation developments.  (Docket No. 397 at 13.)  Because we decide the order on the basis of commonality and typicality, we need not address this factual dispute.

Civil No. 09-1209 (JAF)                                                          -6-

1    amended their complaint, alleging five causes of action.  (Docket No. 169.)  Plaintiffs'

2    claims arose from Defendants' allegedly "common fraudulent scheme designed to

3    systematically deny, delay and decrease payments to dentists" accomplished through

4    contracts of adhesion, manipulation of billing codes, acts of intimidation and coercion, and

5    unfair business practices.  (Docket No. 169.)  Plaintiffs sought, and still seek, $150 Million

6    in damages and injunctive relief.  (Id.)  Defendants MetLife and CGLIC removed this case

7    to our court, utilizing the expanded grant of diversity jurisdiction created by the Class

8    Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2 (codified in scattered sections of

9    28 U.S.C.). (Docket No. 1.)

10          We found that the proposed class had not been sufficiently defined and remanded the

11   case.  (Docket No. 84.)  The First Circuit Court of Appeals found this determination to be

12   better suited for the class-certification stage and, therefore, returned the case to us.  College

13   of Dental Surgeons of Puerto Rico v. Conn. Gen. Life Ins. Co., 585 F.3d 33 (1st Cir. 2009).[4]

14   We then ordered limited discovery and briefing as to the applicability of the "Local

15   Controversy" and "Home State" exceptions to CAFA jurisdiction, see 28 U.S.C.

16   § 1332(d)(4).  (Docket No. 101.)   We denied motions to remand the case based upon these

17   exceptions.  (Docket No. 164.)

18   In August 2011, we entered an opinion and order dismissing all of Plaintiffs' claims except

19   their breach-of-contract claim. (Docket No. 278 at 17.)  We held that the remaining claim

20   was "dentist-specific" and "only boils down to potential money due and owing."  (Id. at 17.)

21   We also asked the parties to brief whether Plaintiffs had satisfied the "amount in

_____

[4] A copy of the First Circuit's opinion can be found at Docket No. 95.

1   controversy" jurisdictional element of CAFA.  (Id.)  The parties complied with that order

2   and submitted limited discovery.

3        In response to our opinion and order dismissing all but one of their claims, Plaintiffs

4   filed a motion for reconsideration. We rejected the motion. (Docket No. 350.) Plaintiffs then

5   appealed our decision to the Court of Appeals.  Their appeal was dismissed for lack of

6   finality.  (Docket No. 363.)  Plaintiffs then filed a second motion for reconsideration, which

7   we also rejected.  (Docket No. 366.)  Codefendant MMM filed a motion for reconsideration,

8   arguing that Plaintiffs' contract claim should be dismissed for lack of privity.  (Docket

9   No.  85.) We denied the motion without prejudice, finding that such questions were more

10  appropriate for the class certification stage of the case.  (Docket No. 366.)  We also asked

11  the parties to brief the question of class certification to us, and the parties complied.

12                                              **III.**

13                                      **Legal Standard**

14       A class action lawsuit is "an exception to the usual rule that litigation is conducted by

15  and on behalf of the individual named parties only."  Wal-Mart Stores, Inc. v. Dukes, 131

16  S.Ct. 2541, 2550 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-701 (1979)).

17  Under Rule 23, in order for a class to be certified, the class must meet the four requirements

18  of Rule 23(a), as well as one of the requirements of Rule 23(b).  Fed. R. Civ. P. 23.

19  Plaintiffs argue that they have satisfied the requirements of Rule 23(b)(3).[5]

---

[5] In their amended complaint, Plaintiffs made brief reference to certification under Rule 23(b)(2). (Docket No. 169 at 3.)  But, after MetLife and Humana challenged Plaintiffs on this point (Docket Nos. 379, 387), Plaintiffs abandoned the argument.  Neither Plaintiffs' memorandum in support of certification nor their response brief mentions Rule 23(b)(2).  (Docket Nos. 383, 397.)  Plaintiffs' abandonment of this issue means that it is waived.  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  In any case, we agree with Defendants Humana and MetLife that Rule 23(b)(2) does not apply here. (Docket Nos. 379 at 12, 387 at 26.) Rule 23(b)(2) does not apply to cases such as this, where Plaintiffs "would be entitled to an individualized award of monetary damages," and where "a single

Civil No. 09-1209 (JAF)                                                                -8-

1    To determine whether class certification is appropriate under Rule 23(b)(3), we must

2    determine whether Rule 23(a)'s "threshold requirements" have been met, as well as whether

3    Rule 23(b)(3)'s two additional requirements are met.  In Re New Motor Vehicles, 522 F.3d

4    6, 18 (1st Cir. 2008) (citations omitted).   Rule 23(a) provides that class certification is

5    appropriate only if:

6            (1) The class is so numerous that joinder of all members is
7            impracticable; (2) there are questions of law or fact common to
8            the class; (3) the claims or defenses of the representative parties
9            are typical of the claims or defenses of the class; and (4) the
10           representative parties will fairly and adequately protect the
11           interests of the class.
12
13   Fed. R. Civ. P. 23(a).  These requirements are often referred to as numerosity, commonality,

14   typicality, and adequacy.  In Re Motor Vehicles, 522 F.3d at 19.

15   To certify a class under Rule 23(b)(3), we must also find that "the questions of law or

16   fact common to class members predominate over any questions affecting only individual

17   members, and that a class action is superior to other available methods for fairly and

18   efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

19   "The moving party bears the burden of establishing the elements necessary for class

20   certification the four requirements of 23(a) and one of the several requirements of Rule

21   23(b)."  Abla v. Brinker Restaurant Corp., 279 F.R.D. 51, 55 (D. Mass. 2011) (citing

22   Smilow v. Sw. Bell Mobile Sys., 323 F.3d 32, 38 (1st Cir. 2003)). "Rule 23 does not set

23   forth a mere pleading standard.   A party seeking class certification must affirmatively

---

injunction would [not] provide relief to every member of the class."  Wal-Mart, 131 S. Ct. at 2557.  As we stated in our earlier order, Plaintiffs' remaining contract claim "only boils down to potential money due and owing."  (Docket No. 278 at 17.)  Plaintiffs have not proposed any form of injunctive or declaratory relief that would bring relief to each member of the class.

1  demonstrate his compliance with the Rule." <u>Wal-Mart</u>, 131 S.Ct. at 2551 (2011).  We may

2  certify a class only if we are "satisfied, after a rigorous analysis, that the prerequisites of

3  Rule 23(a) have been satisfied."  <u>Id.</u> (quoting <u>General Telephone Co. of Southwest v.</u>

4  <u>Falcon</u>, 457 U.S. 147, 160 (1982)).

5          In undertaking this analysis, "sometimes it may be necessary for the court to probe

6  behind the pleadings before coming to rest on the certification question." <u>Id.</u>  Our analysis

7  may, therefore, overlap with an assessment of the merits of a party's claim. <u>Id.</u>  "That

8  cannot be helped. 'The class determination generally involves considerations that are

9  enmeshed in the factual and legal issues comprising the plaintiff's causes of action.'" <u>Id.</u>

10  (quoting <u>Falcon</u>, 457 U.S. 160).

11          For the reasons explained below, we find that Plaintiffs fail the commonality and

12  predominance requirements.[6]  Our analysis of the relevant factors under Rule 23 will

13  overlap somewhat.  The First Circuit has recognized that "there is some overlap among the

14  certification criteria of commonality, Rule 23(a)(2), typicality, Rule 23(a)(3), and

15  predominance, Rule 23(b)(3)."  <u>In Re Motor Vehicles</u>, 522 F.3d at 19.

---

[6] Although Plaintiffs and certain defendants presented arguments on the question of standing, we do not reach this issue, given our disposition of the class certification issue on the commonality and predominance factors contemplated by Rule 23.

1                                           **IV.**

2                                      <u>**Analysis**</u>

3   **A.      <u>Numerosity</u>**

4          Rule 23(a)(1) requires a party to show that "[t]he class is so numerous that joinder of

5   all members is impracticable."   Interpreting this language, courts have held that

6   "representatives only need to show that it is extremely difficult or inconvenient to join all

7   the members of a class."   7A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane,

8   <u>Federal Practice and Procedure</u> § 1762, at 221 (3d ed. 2005)).   The criteria for this test will

9   vary from case to case; no arbitrary rules exist specifying the minimum number of members

10  of the class.  <u>Id.</u> at 1762.

11         Plaintiffs argue that they have satisfied the numerosity requirement, because of the

12  large number of potential plaintiffs, defendants, and the complaint's long time period.

13  (Docket No. 383 at 7-9.)   Plaintiffs note that the College includes 1,740 dentists; their

14  "summary of claims" identifies 906 specific grievances; and the complaint covers a ten-year

15  time period.    (<u>Id.</u>)    Defendant MetLife argues that this is insufficient to establish

16  numerosity, because there is no showing of how many plaintiffs may have valid claims.

17  (Docket No. 396 at 4.)   Plaintiffs' Summary does not specify how many plaintiffs are

18  represented.  (Docket No. 387-1.)  The fact that there are 1,740 dentists who are members of

19  the College does not mean that all of these plaintiffs have claims.  (<u>Id.</u>)  It may be possible,

20  MetLife argues, that only a small fraction of the dentists in the College have claims against

21  defendants.  (<u>Id.</u>)

22         We think that the large number of claims alleged by Plaintiff is sufficient to satisfy

23  the numerosity requirement.   Even despite Plaintiffs' weak factual showings, it may prove

Civil No. 09-1209 (JAF)                                                                          -11-

1   impracticable to join all of the eventual plaintiffs and defendants in a single case.  In light of

2   our determination below that Plaintiffs have failed the commonality and predominance

3   criteria, it is unnecessary to address numerosity at any greater length.

4   **B.    Commonality**

5        Rule 23(a) requires that "there are questions of law or fact common to the class."

6   Traditionally, courts gave this factor a "permissive application." In Re New Motor Vehicles,

7   522 F.3d 6, 18 (1st Cir. 2008) (quoting 7A Charles Alan Wright, Arthur R. Miller, Mary

8   Kay Kane, Federal Practice and Procedure § 1763, at 221 (3d ed. 2005)). But in the recent

9   case of Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011), the Supreme Court

10  construed the requirement more strictly.   There the Court held that to satisfy the

11  commonality requirement, a representative's claim must "depend upon a common

12  contention" that is "of such a nature that it is capable of classwide resolution—which means

13  that determination of its truth or falsity will resolve an issue that is central to the validity of

14  each one of the claims in one stroke." Wal-Mart, 131 S.Ct. at 2551.   The Court

15  approvingly quoted a more restrictive interpretation of Rule 23's "easy to misread"

16  language. Id. To show commonality, a party must do more than merely present common

17  questions. Id. Rather, a party must demonstrate "the capacity of a classwide proceeding to

18  generate common answers apt to drive the resolution of the litigation.  Dissimilarities within

19  the proposed class are what have the potential to impede the generation of common

20  answers." Id. at 2551 (2011) (quoting Nagareda, Class Certification in the Age of

21  Aggregate Proof, 84 N.Y.U. L.Rev. 97, 131-132 (2009)).

22       First, we consider the arguments Plaintiffs have made in support of class

23  certification.  We note at the outset that Plaintiffs' showing is very weak.  Their legal

Civil No. 09-1209 (JAF)                                                                -12-

1   analysis is superficial and outdated.  For example, Plaintiffs cite to district court cases that

2   are now fifteen years old, such as <u>Barreras v. The American Tobacco Co.</u>, 180 F.R.D. 194,

3   195 (1998).  (Docket No. 383 at 6.)  In light of the "hundreds of recent decisions affecting

4   the expanse of class action" litigation, this type of legal argumentation is unsatisfactory.

5   <u>McLaughlin on Class Actions: Law and Practice</u>, Vol. 1, Preface at iii (8th ed. 2011).  Given

6   the rapid developments in class action litigation, parties are advised "to cite class action

7   authority that is even a few years old only after evaluating its continuing vitality against

8   recent pronouncements." <u>Id.</u>  Plaintiffs have failed to do so.

9        Much more significant is Plaintiffs' complete failure to provide any detailed factual

10  argumentation.   While Plaintiffs are not required at this stage to prove any of their

11  allegations, their Summary is far below the type of showing required for certification.

12       In fact, Plaintiffs' Summary "does nothing more than list twenty-two categories of

13  alleged conduct and place a number next to each category."  (Docket No. 396 at 2.)  The

14  Summary does not say anything about the proposed class.  It does not state how many

15  members of the purported class are represented in the Summary.  Nor does the Summary

16  even mention the name of any individual class member.  As MetLife points out, the sample

17  could include two dentists or one hundred dentists.  The Summary does not state how the

18  sample was gathered, or whether it is meant to be random or representative.  (Docket

19  No. 396 at 2-3.)  Moreover, the Summary is not authenticated.  There are no affidavits or

20  statements supporting the Summary.  No explanation of how the Summary was created is

21  made.  The Summary does not state what type of conduct underlies each claim, or whether

22  there is any overlap between the different claims.  (Docket No. 396.)

1        Plaintiffs argue that they have met the commonality requirement because "all claims

2    set forth against Defendants are directly related to Defendants' actions in breach of the

3    contractual relationships exiting [sic] with the proposed class members, which actions

4    violate the provisions of Articles 1207, 1208, 1054, 1059, 1795, 1796, of the Puerto Rico

5    Civil Code." (Docket No. 383 at 9.)  Plaintiffs then list an incredibly long and varied, non-

6    exhaustive list of the actions they allege Defendants took: requiring Plaintiffs to enter into

7    boilerplate adhesion contracts that establish terms of payments, audit proceedings, solution

8    of grievance proceedings, etc.; unjust changing of invoicing codes; failure to comply with

9    payments; delay and denial of payments for "different" reasons; changing dentists' clinical

10   criteria based on economic interests; and retaliation against class members.  (Id.)

11        It is unclear what common questions of law or fact bind these disparate claims.  To

12   the contrary, the wide-ranging nature of these allegations militates against a finding of

13   commonality. (Docket No. 399 at 6-7.)  Plaintiffs end their discussion of commonality with

14   the assertion that all of Defendants' actions "not only result in economic losses to class

15   members but also are detrimental to patient interests and adversely affect the profession as a

16   whole."  (Id.)  In their response brief, Plaintiffs argue that Defendants have engaged in

17   "class-wide practices" that hurt the dentist profession as a whole.  (Docket No. 397 at 11-

18   12.)  Plaintiffs state that, "for example, Defendants have adopted a practice of automatically

19   bundling and down-coding certain codes for services provided by dentists, irrespective of

20   the terms of contracts." (Id.)  Plaintiffs provide no detail or set of facts that explains how

21   Defendants committed these alleged practices. (Id.)

22        In contrast to Plaintiffs' shallow analysis, Defendants have provided detailed and

23   persuasive legal and factual arguments in their opposition briefs.  Defendants focus the

Civil No. 09-1209 (JAF)                                                                          -14-

1   majority of their arguments on Plaintiffs' failure to satisfy the commonality requirement.

2   Defendant MetLife describe the many different types of injuries and contractual

3   arrangements that make up Plaintiffs' case.  (Docket No. 387 at 11-19.)  MetLife also

4   emphasizes the individualized, specific evidentiary proof that would be required for each

5   plaintiff to prevail on his claims.  (Id.)  Defendant Humana makes similar arguments

6   regarding commonality.  (Docket Nos. 379 at 10-11, 399 at 10.)  Defendants MMM and

7   PMC join Humana's memorandum and file a brief supplemental memorandum.  (Docket

8   No. 377.)  Defendants First Medical Health Plan, Inc. and International Medical Card, Inc.

9   also argue that Plaintiffs have failed to show the requisite commonality.  (Docket No. 376 at

10  4-7.)  Defendant Triple-S, Inc.[7] treats the commonality and predominance requirements

11  jointly, arguing that Plaintiffs fail both requirements.  (Docket No. 382 at 9-18.)

12      We agree that Plaintiffs have failed the commonality requirement.   Tellingly,

13  Plaintiffs' memorandum and response briefs do not cite to any case in which similar

14  allegations have satisfied the commonality prong.  In fact, the case that Plaintiffs cite more

15  than any other, In re Puerto Rican Cabotage Antitrust Litigation, 269 F.R.D. 131 (D.P.R.

16  2010), highlights the significant differences that distinguish Plaintiffs' case from a properly

17  certified class.   In Puerto Rican Cabotage, the plaintiffs provided detailed allegations of a

18  common conspiracy among eight providers of waterborne cabotage services to illegally fix

19  prices.  Id. at 128.  The court held these allegations sufficient to establish commonality,

20  noting that in antitrust claims, "the existence of an alleged conspiracy or monopoly is a

21  common issue that will satisfy" the commonality requirement.  Id. (quoting 1 Herbert B.

_____

[7] Triple S, Inc. files its brief on behalf of itself as well as Triple-C, Inc.; and Triple-S Management, Inc.; American Health, Inc.; Cruz Azul de PR, Inc.; MCS Advantage, Inc.; MCS Management Options, Inc.; MCS; and Delta.

Civil No. 09-1209 (JAF)                                                                    -15-

1    Newberg & Alba Conte, <u>Newberg on Class Actions</u> § 3.10 (4th ed.2002)).   This case,

2    however, is not an antitrust case, and there are no remaining allegations of a conspiracy.

3    <u>Puerto Rican Cabotage</u> is thus clearly inapposite.   Unlike <u>In Re Puerto Rican Cabotage</u>, here

4    there are no common questions of law or fact that bind the entire class together.

5         The second major distinction between this case and <u>Puerto Rican Cabotage</u> is the

6    huge gap in the level of factual detail proffered to support certification.   In <u>Puerto Rican</u>

7    <u>Cabotage</u>, plaintiffs "buttressed" their claims with detailed allegations regarding the

8    finances of defendants and the market, as well as "assertions based upon the existence of an

9    ongoing criminal investigation by the Department of Justice." <u>Id.</u> at 128.   Plaintiffs also

10   presented affidavits of several named plaintiffs, explaining why they were adequate class

11   representatives. <u>Id.</u> at 133.   In <u>Puerto Rican Cabotage</u>, the plaintiffs also provided reports

12   and affidavits by experts describing how many customers were affected by defendants'

13   practices. <u>Id.</u> at 130, 133.

14        Here, by contrast, the evidence provided by Plaintiffs is "worlds away" from the

15   showing required to support certification. <u>Wal-Mart</u>, 131 S.Ct. at 2554.   The only evidence

16   Plaintiffs have provided is the Summary.   We are perplexed why Plaintiffs have failed even

17   to provide any affidavits, given the clear wording of our earlier order addressing class

18   certification.   (Docket No. 366.)   In our earlier order, we specifically called for the

19   Plaintiffs to provide "limited supplementation (e.g., affidavits by plaintiffs) that addresses

20   the narrow question of class certification." (<u>Id.</u> at 3.)   Why Plaintiffs disregarded this order

21   is a mystery.   Their failure to provide any detailed factual treatment has done great harm to

22   their case for certification.

1    Many courts in this district have consistently denied certification on such weak

2    factual showings.    See Rodriguez-Feliciano v. Puerto Rico Electric Power Auth., 240

3    F.R.D. 36, 39 (D.P.R. 2007) (noting a court's obligation to test for "actual, not presumed,

4    conformance with Rule 23") (citations omitted); Collazo v. Calderon, 212 F.R.D. 437, 441-

5    443 (D.P.R. 2002) (denying certification where plaintiffs had failed to "proffer some

6    evidence" of numerosity and typicality); Alvarado Morales v. Digital Equipment Corp., 669

7    F. Supp. 1173, 1185-1186 (D.P.R. 1987) (denying class certification where plaintiffs

8    "fail[ed] to plead facts sufficient to show" that Rule 23 requirements were met).

9        As MetLife argues, the case of Rodriguez-Feliciano is instructive for our purposes.

10   (Docket No. 399.)   There, as here, the plaintiffs alleged that commonality was satisfied

11   because defendant's actions had affected the entire plaintiff class as a whole.  Id.  The court

12   in Rodriguez-Feliciano had little trouble concluding that this "bold and brief assertion" of

13   class-wide injury was insufficient to demonstrate commonality.  Id.  Here we are presented

14   with a similarly "bold and brief" assertion of the alleged harm done to the plaintiff dentist

15   class.    Plaintiffs' allegations, as they were in Rodriguez-Feliciano, are completely

16   unsupported by any factual detail.

17       Even if we were to overlook the barebones nature of Plaintiffs' argument, it seems

18   clear that abundant factual distinctions have the potential to impede common answers.  Wal-

19   Mart, 131 S.Ct. at 2551.   Here, there are no "common answers" that can solve the key

20   questions "in one stroke."  Id.  Even Plaintiffs acknowledge that Defendants refused to pay

21   their claims for "different" reasons.  (Docket No. 383 at 9.)  These different reasons that

22   Defendants allegedly provided for refusing Plaintiffs' claims militate against a finding of

Civil No. 09-1209 (JAF)                                                      -17-

1   commonality. See id. ("demonstrating the invalidity of one manager's use of discretion will

2   do nothing to demonstrate the invalidity of another's.").

3        For example, here one plaintiff may be able to prove that one defendant, say MetLife,

4   provided an impermissible reason for underpaying a particular claim.  But that would do

5   nothing to show that a different defendant, say Humana, underpaid a different claim by a

6   different plaintiff.  This is so not only because MetLife and Humana may have used

7   different reasons for denying claims, but also because the contracts themselves were not the

8   same.  A breach as to one party may not be a breach as to another.  See Klay v. Humana,

9   Inc., 382 F.3d 1241, 1264 (11th Cir. 2004) (holding that plaintiffs' general allegations of

10  underpayment "do nothing to establish that any individual doctor was underpaid on any

11  particular occasion") (citations omitted).

12       Many other courts, including ones in this circuit, have applied Wal-Mart to even

13  stronger facts, finding that plaintiffs could not show the requisite commonality.  See Loef v.

14  First American Title Insurance, Civ. No. 08-311, 2012 WL 6113844, at *7 (D. Me. Dec. 10,

15  2012) (noting that Wal-Mart has transformed the Rule 23(a)(2) commonality standard from

16  a "low bar" to "a far more searching inquiry.") (citations omitted).  In Loef, the court held

17  that plaintiffs, who had purchased title insurance at allegedly inflated rates, could not show

18  that they were entitled to a particular refinance rate without resorting to individualized

19  proof.  Id.  Thus, although plaintiffs could present common questions, dissimilar answers

20  defeated commonality.  Id.  (citing Wal-Mart, 131 S.Ct. at 2556).  Finding there were no

21  "common answers to these common questions," the court held that plaintiffs could not

22  satisfy commonality.  Id.  (collecting cases).

Civil No. 09-1209 (JAF)                                                                                    -18-

1        A district court in Nevada recently dismissed a down-coding and bundling claim that

2   is similar to Plaintiffs' case here.  In Windisch v. Hometown Health Plan, Inc., Civ. No. 08-

3   664, 2011 WL 4758715, at *2 (D. Nev. Oct. 7, 2011), the court held that a purported

4   plaintiff class of medical providers had failed to establish commonality.   Citing Wal-Mart,

5   the court wrote that plaintiffs had failed to allege a "common bad act" that could serve as

6   the "glue" to bind together a class claim against four health insurer defendants.  Id.  Here, as

7   in Windisch, there are no well-pleaded allegations that defendants engaged in a common

8   policy of down-coding and bundling.  Here, Plaintiffs allege a "pattern of conduct incurred

9   by Defendants," claiming that Defendants have "consistently incurred in said practices."

10  (Docket No. 397.)  But, here, Plaintiffs do not provide any well-pleaded allegations that

11  Defendants down-coded or bundled in common ways.

12       These are very similar to the allegations that the district court found lacking in

13  Windisch, where the plaintiffs alleged a "pattern of similar bad acts with no common

14  decision or decision-maker."  Id. at *5.  The court held that merely "similar grievances," as

15  opposed to a unified course of action by defendants, could not establish commonality under

16  Wal-Mart.  Id.;  see also Quesada v. Banc of America Inv. Services,  Civ. No. 11-1703,

17  2013 WL 623288, (N.D. Cal. Feb. 19, 2013,) (finding no commonality where "Plaintiff has

18  not proposed a realistic means for classwide resolution of the common question" whether

19  Defendant recorded call without plaintiffs' consent).

20       The same reasoning applies here.  Plaintiffs have simply failed to satisfy the

21  commonality requirement.  Wal-Mart, 131 S.Ct. at 2551-52. The  Supreme  Court

22  acknowledged in Wal-Mart that the commonality, typicality and adequacy requirements are

23  related concepts.  Id. at 2551 n.5 ("The commonality and typicality requirements of Rule

1   23(a) tend to merge.  Both serve as guideposts" for determining whether class certification

2   is appropriate under particular circumstances).  In <u>Wal-Mart</u>, the Supreme Court found it

3   unnecessary to evaluate these related inquiries, given its finding that Plaintiffs failed the

4   commonality requirement.  <u>Id.</u>  We take the same approach here.  In light of our finding that

5   Plaintiffs fail both the commonality and predominance factors, we find it unnecessary to

6   address the adequacy and typicality requirements.

7   **C.   <u>Predominance</u>**

8          Predominance has traditionally been construed as a more demanding standard than

9   commonality.  <u>In Re Motor Vehicles</u>, 522 F.3d at 19.  Moreover, "the predominance inquiry

10  . . . involves an individualized, pragmatic evaluation of the relationship between and the

11  relative significance of the common and individual issues." <u>Abla</u>, 279 F.R.D. at 57 (quoting

12  <u>In Re Relafen Antitrust Litigation</u>, 218 F.R.D. 337, 343 (D. Mass. 2003)).   To determine

13  whether predominance is met "necessarily implicates the judge's discretion, because it

14  requires a common sense judgment regarding what the case is really about, and whether it

15  would be more efficient to try the case as a class suit."  <u>Id.</u> (quoting <u>Overka v. American</u>

16  <u>Airlines</u>, 265 F.R.D. 14, 19 (D. Mass. 2010)).

17         Our assessment of this case, based on the proffered evidence presented to us, is that

18  individualized issues of fact will predominate over common ones.  The uncontested factual

19  evidence submitted by MetLife and Humana, in particular, demonstrates the myriad factual

20  distinctions that will frustrate any effort to try this case as a class action.  Plaintiffs have

21  simply failed to set their case apart from the long line of cases in which "[n]umerous courts

22  have held that the need to examine individual negotiations or individual contracts to

23  determine injury weighs against class certification, for it requires an unwieldy examination

1   of each transaction to decide if there is proximate cause." In Re Pharmaceutical Industry

2   Average Wholesale Price Litigation, 230 F.R.D. 61, 89 (D. Mass. 2005) (collecting cases).

3   This case thus fits squarely within this long line of decisions holding individual breach of

4   contract claims not susceptible to class treatment.

5          Plaintiffs' discussion of the predominance requirement, similar to their commonality

6   argument, does not even acknowledge all of the relevant considerations.  (Docket Nos. 383,

7   397.)  Plaintiffs write a conclusive assertion that they "satisfie[d] Rule 23(b)(3) because the

8   common questions of law or fact predominate over any questions affecting individual

9   members, and the class action is superior to other available methods for fairly and

10  efficiently adjudicating the controversy."  (Docket No. 383 at 14.)   In support of this

11  statement, Plaintiffs claim that "the class members are not interested in individually

12  controlling the prosecution of separate actions."  (Docket No. 383 at 15.)  Plaintiffs also

13  state that they fear retaliation by Defendants if they handle these cases individually.  (Id.)

14         This factor that Plaintiffs allude to—a party's interest in individually controlling the

15  prosecution or defense of separate actions— is only one of the four factors that Rule

16  23(b)(3) specifically provides as relevant to the predominance inquiry. See Fed. R. Civ. P.

17  23(b)(3) (listing four "matters pertinent to these findings").  Plaintiffs make no reference to

18  second or fourth factors contemplated by the Rule, such as "the extent and nature of any

19  litigation concerning the controversy already begun by or against class members," or "the

20  likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(b), (d).

21         Defendant Humana argues specifically that Plaintiffs fail the predominance

22  requirement.  (Docket No. 399 at 6-8.)  Although many of the other defendants characterize

23  most of their analyses as ones under commonality, we think they are equally, if not more

1    squarely rooted in the notion of predominance.   As we noted above, "there is some overlap

2    among the certification criteria of commonality, Rule 23(a)(2), typicality, Rule 23(a)(3), and

3    predominance, Rule 23(b)(3)." In Re Motor Vehicles, 522 F.3d at 19.   For the following

4    reasons, we agree that Plaintiffs fail the predominance requirement.

5         The case that Humana and MetLife cite more than any other is Klay v. Humana, 382

6    F.3d 1241, 1263 (11th Cir. 2004), abrogated in part on other grounds by Bridge v. Phoenix

7    Bond Indem. Co., 553 U.S. 629 (2008).   In Klay, the Eleventh Circuit Court of Appeals

8    reversed a lower court's order certifying a plaintiff class of health care providers.  Id.   The

9    court held that plaintiffs' breach of contract claims failed to satisfy the commonality and

10   predominance requirements.  Id.  at 1267.  ("[E]ven though the plaintiffs' breach of contract

11   claims involve some relatively simple common issues of law and possibly some common

12   issues of fact, individualized issues of fact predominate.").   The parallels between Klay and

13   this case are clear.   MetLife notes the many similarities between Plaintiffs' allegations and

14   the ones made by the plaintiffs in Klay.  (Docket No. 387.)

15        In Klay, the court held that to determine whether each individual plaintiff had a claim

16   for breach of contract would require a highly fact-intensive inquiry into each relevant

17   transaction.  Each plaintiff would have to prove the services he provided, the request for

18   reimbursement he submitted, the amount to which he was entitled, the amount he actually

19   received, and the insufficiency of the defendant insurer's reason for denying full payment.

20   Id. at 1265.  The court held that such claims were simply not susceptible to class treatment.

21   See id. ("There are no common issues of fact that relieve each plaintiff of a substantial

22   portion of this individual evidentiary burden.").   The same reasoning applies fully here.

Civil No. 09-1209 (JAF)                                                    -22-

1    Plaintiffs respond that their case is sufficient to establish predominance under Klay.

2    (Docket No. 397 at 16-17.)   Plaintiffs argue that their case fits within an exception

3    recognized by the court in Klay.  (Docket No. 397 at 16-17.)  Specifically, Plaintiffs argue

4    that they satisfy commonality by alleging "class-wide bundling and down-coding practices

5    by Defendants, irrespective on [sic] how each Defendant uses their systems to attain their

6    goal." (Id. at 17.)  Plaintiffs quote the following language from Klay, 382 F.3d at 1265:

7                    If the plaintiffs were able to prove that the billing programs
8                    automatically grouped together the first and second procedure
9                    specified on the HCFA-1500 form, regardless of what they
10                   were paying doctors for the first, then the breach of contract
11                   issue would be subject to generalized proof. After establishing
12                   that the computer program worked in this way, the doctors
13                   would be able to simply submit their HCFA forms to the court
14                   for an easy determination of damages; no further evidence of
15                   breach would be necessary.
16
17   We agree that if Plaintiffs were able to prove this type of systematic breach, they

18   would be able to establish commonality.  For example, if Plaintiffs could point to one way

19   in which the computer systems used by Defendants down-coded and bundled their claims,

20   they might be able to establish that common questions predominated over individual ones.

21   But here Plaintiffs have provided no explanation—none whatsoever—for how they intend to

22   use such a generalized method of proof to demonstrate breach of contract.  They do not even

23   explain what the "class-wide bundling and down-coding practices" consisted of.  In fact,

24   Plaintiffs themselves say that they intend to prove Defendants breached their contracts

25   irrespective of how Defendants' systems worked.  We are at a complete loss as to how

26   Plaintiffs intend to prove their claims.  There is no suggestion of any way in which Plaintiffs

27   could satisfy their evidentiary burden with class-wide evidence or proof.

1    In De Giovanni v. Jani-King Intern., Inc., 262 F.R.D. 71, 77 (D. Mass. 2009), the

2    court noted that "[p]laintiffs have not put forward any common form of proof that would

3    permit this Court to make such a determination without engaging in lengthy, individualized

4    inquiries regarding breach. As such, common issues will not predominate, and class

5    certification of the breach of contract claim is inappropriate." 262 F.R.D. at 77. Again, the

6    same is true here.   In this case, Plaintiffs have completely failed to put forward "any

7    common form of proof" that would make Plaintiffs' claims susceptible to class treatment.

8    See id.   ("Consequently, because, in resolving the class' breach of contract claims,

9    individualized inquiries would overwhelm common questions, the Court denies the

10   plaintiffs' motion to certify the breach of contract claims.").

11       Plaintiffs' Summary provides little, if any, guidance.  The Summary includes one line

12   that says "Unjust changes to invoicing codes." (Docket No. 383-1.)  Plaintiffs allege fifty-

13   two claims under this heading.  (Id.)   The only Defendants that are alleged to have

14   committed this are American Health, CIGMA, COSVI, Delta, First Plus, Humana, MCS,

15   MetLife, Preferred Medical Choice, Triple-S, and Medicare Dental.  (Id.)  We note that

16   eleven of the defendants are not listed as having committed any violations under this

17   category.  (Id.)   Yet this category—down-coding and bundling—is the only category

18   Plaintiffs mention in their response brief's discussion of the predominance requirement.

19   (Docket No. 397 at 17-18.)   It is not clear what claims are supposed to justify joining the

20   remaining eleven defendants who are not included in this category.  Nor is it possible to tell

21   how many plaintiffs are bringing claims of down-coding and bundling.

22       Even if Plaintiffs did allege that all twenty-two defendants committed down-coding

23   and bundling, we think that individualized questions would predominate.  To get a sense for

1    why this is so, consider the necessary elements of plaintiff's claims.  To establish a valid

2    breach of contract claim under Puerto Rico law, a plaintiff would need to prove: 1) a valid

3    contract; 2) breach of that contract; and 3) damages.  See Mega Media Holdings, Inc. v.

4    Aerco Broadcasting Corp., 852 F.Supp.2d 189, 199-200 (D.P.R. 2012) (citations omitted).

5         In this case, the evidence required to establish a breach of contract claim would

6    require hundreds, if not thousands, of mini-trials devoted to analyzing each disputed

7    contract provision and transaction.  Plaintiffs entered into different contracts with as many

8    as twenty-two defendants over a ten-year period.  Making matters worse, the complaint

9    alleges that the contracts were subject to "continuous" variance over time, as insurers

10   terminated or amended contracts.  (Docket No. 169 at 6.)  Moreover, the contracts used by

11   the different defendants contain materially different terms—this is not a situation where all

12   plaintiffs signed one form contract.  Certain defendants, such as MetLife, specifically

13   disclosed that certain CDT codes were not eligible for payment when combined with other

14   CDT codes.

15        The uncontested factual detail provided by MetLife and Humana illustrates the

16   various pieces of evidence that would have to be considered in each transaction: The

17   patient's name, the date(s) of service, the CDT codes the dentist identified on the claim

18   form, the CDT codes paid or denied, amount paid per CDT code, and the maximum

19   allowable charges for each procedure, which varied from time to time during the ten-year

20   time frame.  This type of inquiry is simply not susceptible to class treatment.  See Abla, 279

21   F.R.D. at 58 (D. Mass. 2011) ("it is not possible or advantageous" to treat breach of contract

1   claims as class action where each claim is susceptible to individual proof and defense); see

2   also Sacred Heart Health Sys., Inc. v. Humana, 601 F.3d 1170-71 (11th Cir. 2010) (finding

3   that "individualized issues flowing from variations in the contractual terms and the parties'

4   course of dealings" defeat commonality).

5          In conclusion, Plaintiffs have simply failed to carry their burden to "affirmatively

6   demonstrate [their] compliance with the Rule." Wal-Mart, 131 S.Ct. at 2551 (2011).

7   Plaintiffs' motion to certify the class will be denied.  The language from our earlier order is

8   still true: this case is "dentist-specific" and "only boils down to potential money due and

9   owing." (Docket No. 283 at 17.)

10                                              **V.**

11                                       **<u>Next Steps</u>**

12         The question whether jurisdiction under CAFA still exists following decertification is

13   an open question within the First Circuit.  See College of Dental Surgeons of Puerto Rico v.

14   Conn. Gen. Life Ins. Co., 585 F.3d 33 (1st Cir. 2009) (expressing "no opinion on this

15   question") (collecting cases).  There is authority on both sides of this debate.  Compare

16   Falcon v. Philips Elecs. N. Am. Corp., 489 F.Supp.2d 367, 368 (S.D.N.Y.2007) (stating that

17   CAFA jurisdiction is terminated if class certification is denied on a "basis that precludes

18   even the reasonably foreseeable possibility of subsequent class certification"), and In re TJX

19   Cos. Retail Sec. Breach Litig., 564 F.3d 489, 492 (1st Cir.2009) (suggesting in dictum that

20   "denial [of class certification] would ... defeat [CAFA] jurisdiction"), with Genenbacher v.

21   CenturyTel Fiber Co. II, 500 F.Supp.2d 1014, 1017 (C.D. Ill. 2007) (contra).  See generally

22   Avritt v. Reliastar Life Ins. Co., Civ. No. 07-1817, 2009 WL 1703224, at *1-2 (D. Minn.

23   June 18, 2009) (collecting conflicting case law).

Civil No. 09-1209 (JAF)                                                                                    -26-

1       The parties are instructed to brief the question whether jurisdiction still exists under

2    CAFA following this order.  In their memorandums, the parties should also propose to the

3    court a reasonable means of concluding this case expeditiously.  We continue to believe that

4    this case is "dentist-specific" and only "boils down to potential money due and owing."

5    (Docket No. 283 at 17.)

6                                                   **VI.**

7                                              <u>**Conclusion**</u>

8       For the reasons stated above, we **DENY** Plaintiffs' motion to certify a class.

9    **IT IS SO ORDERED.**

10      San Juan, Puerto Rico, this 13th day of March, 2013.

11                                      s/José Antonio Fusté
12                                      JOSE ANTONIO FUSTE
13                                      United States District Judge