| | |
|---|---|
| **PUERTO RICO COLLEGE OF DENTAL SURGEONS, et als.**<br>**Plaintiffs**<br><br>**v.**<br><br>**TRIPLE S MANAGEMENT INC., ET ALS.**<br>**Defendants** | **CIVIL NO.  09-1209 (JAF)** |

## SECOND AMENDED COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** the plaintiffs, Dr. Thomas Medina Medina, Dr. Isabel M. Del Valle Díaz, Dr. Norma Martínez and Dr. Valmín Miranda Santiago, through the undersigned legal counsel, and very respectfully state, allege and pray:

### I.      INTRODUCTION

The practice of insurance companies with relation to services and/or procedures to be rendered by dentists is governed by an adhesion contract, redacted by the insurance companies and subscribed by the parties, the corresponding dental provider manuals, addendums, and circular letters adopted by said companies from time to time.

In said provider contracts, manuals, addendums, and circular letters, the insurance companies identify the different procedures or services that may be rendered by the provider dentists to patients with dental insurance coverage using the American Dental Association's Current Dental Terminology (hereinafter "CDT") codes, which include the description of each dental procedure and/or service.  In addition, the insurance companies unilaterally establish the fees to be paid for each procedure and/or service identified by a code.  Limitations as to payment policies are also included in the stated dental provide manuals, addendums, and circular letters.

Dental providers use these CDT codes to identify the services and procedures rendered to patients. Following the requirements by insurance companies, the dental providers file claims identifying each procedure rendered to patients, using the CDT codes, together with other information required by the insurance company, and fees established by the insurance company for the same. In accordance with the relationship existing between the insurance companies and dental providers, once the dental provider files a claim, within the time frame established by contract or by law and including the information required by the insurance company, said insurance company is to proceed with payment of the services rendered by the dental provider, within a specified period of time. Notwithstanding, defendants insurance companies have adopted practices, whereby they do not honor covered contracted services, which are rendered and billed by dental providers. The defendant insurance companies have adopted practices whereby they substitute, modify, change or fail to honor the CDT codes; thus breaching the terms of the relationship established between the parties.

Defendant insurance companies have adopted a practice whereby they substitute valid procedures, identified and described by a CDT code and with an established fee adopted by said insurance companies, with other less costly procedures; thus, effectively resulting in the change of the services and/or procedures rendered by dentists to patients. An example of this practice[1] is the substitution of Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures with the Intraoral-Complete Series (including bitewings) (D0210) procedure.

The dental provider manuals adopted by the defendant insurance companies over the years have included and identified Panoramic Film (D0330); Bitewings-Two Films (D0272); and Intraoral-Complete Series (including bitewings) (D0210) as separate procedures, each with a designated fee, approved as services and/or procedures to be provided by dental providers to patients with dental insurance coverage plans.

---

[1] Additional evidence and examples of the practices in breach of contract alleged in the present Second Amended Complaint are in the possession of defendant insurance companies and will require a limited discovery on behalf of plaintiffs; which discovery is to be determined by the Court.

By substituting the Intraoral-Complete Series (including bitewings) (D0210) procedure for the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, the insurance companies are changing the nature and description of the services and/or procedures rendered by the dental provider, and avoiding payment of the fees corresponding to the same, in breach of their contractual agreement to pay for services rendered by the dental provider to patients with dental insurance coverage issued by defendants.

Another example of the defendant insurance companies' practice in breach of contract is the substitution of two (2) One-Surface Posterior Restorations (D2140) procedures, performed on the same surface on the same date, which restorations do not extend to any other of the five surface classifications, for a Two-Surface Posterior Restorations (D2150) procedure and/or denial of payment of one (1) of the two (2) One-Surface Posterior Restorations (D2140) procedures, performed on the same surface on the same date, which restorations do not extend to any other of the five surface classifications.

The dental provider manuals adopted by the defendant insurance companies over the years have included and identified One-Surface Posterior Restorations (D2140), Two-Surface Posterior Restorations (D2150), and Three-Surface Posterior Restorations (D2160) procedures as separate procedures, each with a designated fee, approved as services and/or procedures to be provided by dental providers to patients with dental insurance coverage plans.

Defendant insurance companies have adopted a practice whereby when receiving a claim from a dental provider for two (2) one surface posterior restorations (D2140), performed on the same surface on the same date, which restorations do not extend to any other of the five surface classifications, the insurance company automatically denies payment of one of the claimed one surface restorations (D2140) and/or proceeds with payment of another procedure (D2150), which procedure was not rendered and/or claimed by the dental provider. By incurring in this practice, the insurance companies are changing the nature and description of the services and/or procedures rendered by the dental provider, and avoiding payment of the fees

corresponding to the same, in breach of their contractual agreement to pay for services rendered by the dental provider to patients with dental insurance coverage issued by defendants.

## II. JURISDICTION AND COMPETENCE

1.  This court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(a). Venue in this district is proper pursuant to 28 U.S.C. §1391(b)(1). Plaintiffs brought this class action pursuant to Federal Rule of Civil Procedure 23(b)(2), as the party opposing the class is refusing to act on grounds generally applicable to the whole class. After denying class certification, on September 6, 2013, the Court issued an opinion and order determining that jurisdiction in the case would remain in this Court.

## III. THE PARTIES

1.  Dr. Thomas M. Medina Medina, of legal age, resident of Cayey, Puerto Rico, is a dentist licensed to practice in the Commonwealth of Puerto Rico and member of the College of Dental Surgeons since the year 1991, and with offices located at Cayey, Puerto Rico. Among the provider contracts subscribed by Dr. Medina with Defendants, Dr. Medina entered into provider contracts with defendants Triple S, Inc. and/or Triple S Management, Inc. (hereinafter collectively "Triple S"), which terms and conditions have been breached by said Defendant as set forth herein.

2.  Dr. Isabel M. del Valle Díaz, of legal age, resident of Ponce, Puerto Rico, is a dentist licensed to practice in the Commonwealth of Puerto Rico and member of the College of Dental Surgeons since the year 1988, and with offices located at Ponce, Puerto Rico. Among the provider contracts subscribed by Dr. del Valle with Defendants, Dr. del Valle entered into provider contracts with defendants Delta Dental Plan of Puerto Rico, Inc. (hereinafter "Delta Dental"), MCS Health Management Options, Inc. and/or MCS Advantage, Inc. (hereinafter collectively "MCS"), Humana Health Plans of Puerto Rico, Inc. and/or Humana Insurance of Puerto Rico, Inc. (hereinafter collectively "Humana");, and Metropolitan Life Insurance Company

(hereinafter "MetLife'), which terms and conditions have been breached by said Defendants as set forth herein.

3.      Dr. Norma Martínez Acosta, of legal age, resident of Manatí, Puerto Rico, is a dentist licensed to practice in the Commonwealth of Puerto Rico and member of the College of Dental Surgeons since the year 1986, and with offices located at Manatí, Puerto Rico. Among the provider contracts subscribed by Dr. Martínez with Defendants, Dr. Martínez entered into provider contracts with defendants MCS, Delta Dental, and MetLife, which terms and conditions have been breached by said Defendants as set forth herein.

4.      Dr. Valmín Miranda Santiago, of legal age, resident of Caguas, Puerto Rico, is a dentist licensed to practice in the Commonwealth of Puerto Rico and member of the College of Dental Surgeons since the year 1984, and with offices located at Caguas, Puerto Rico. Among the provider contracts subscribed by Dr. Miranda with Defendants, Dr. Miranda entered into provider contracts with defendant MCS, which terms and conditions have been breached by said Defendant as set forth herein.

5.      The Defendants are insurance companies, health services and/or medical plan organizations (hereinafter the "insurance companies" or the "defendants") engaged in providing insurance, which include medical and dental insurance, in accordance with the definitions set forth in the Puerto Rico Insurance Code, Law No. 73 of May 31, 1973, 26 L.P.R.A. § 101, et seq. In order to provide insurance and services in the Commonwealth of Puerto Rico, Defendants must obtain the corresponding license from the Insurance Commissioner. In order to provide their services, Defendants have entered into provider contracts for dental services with Plaintiffs, and other dentists licensed to practice the dental profession, in the Commonwealth of Puerto Rico.

6.      Codefendant TRIPLE S, INC. is a for-profit corporation organized under the laws of the Commonwealth of Puerto Rico. TRIPLE S, INC. is a health services organization that provides one or more health care plans, in accordance with the definitions of the terms set

forth in the Puerto Rico Insurance Code. TRIPLE S, INC. has subscribed contracts with Plaintiffs, and other dentists licensed and authorized to provide dental services in the Commonwealth of Puerto Rico, to cover the dental coverage of its health care plans. Defendant's known address is P0 Box 3636328 San Juan, PR 00936-3628; Tel. 787-749-4949.

7.     Codefendant TRIPLE MANAGEMENT, INC. is a for-profit corporation organized under the laws of the Commonwealth of Puerto Rico. Codefendant TRIPLE MANAGEMENT, INC. is the holding company of codefendants Triple S, Inc. TRIPLE MANAGEMENT, INC. offers health services through Triple S, Inc. TRIPLE MANAGEMENT, INC provides one or more health care plans, through Triple S, Inc., in accordance with the definitions of the terms set forth in the Puerto Rico Insurance Code. TRIPLE MANAGEMENT, INC., through Triple S, Inc., has subscribed contracts with Plaintiffs, and other dentists licensed and authorized to provide dental services in the Commonwealth of Puerto Rico, to cover the dental coverage of its health care plans. Defendant's known address is P0 Box 3636328 San Juan, PR 00936-3628; Tel. 787-749-4949.

8.     Codefendant DELTA DENTAL PLAN OF PUERTO RICO INC. is a for-profit corporation organized under the laws of the Commonwealth of Puerto Rico. DELTA DENTAL is a health services organization that provides one or more health care plans, in accordance with the definitions of these terms set forth in the Puerto Rico Insurance Code. DELTA DENTAL has subscribed contracts with Plaintiffs, and other dentists licensed and authorized to provide dental services in the Commonwealth of Puerto Rico, to cover the dental coverage of its health care plans. Defendant's known address is PO Box 9020992, San Juan, PR 00902-0992; Tel. 787-622- 6120.

9.     Codefendant HUMANA HEALTH PLANS OF PUERTO RICO, INC., known as "HUMANA", is a for-profit corporation organized under the laws of the Commonwealth of Puerto Rico. HUMANA is a health services organization that provides one or more health care

plans, in accordance with the definitions of these terms set forth in the Puerto Rico Insurance Code, through coordinated health care products such as HMO, POS, Medicare Advantage and PrimeCare. HUMANA has subscribed contracts with Plaintiffs, and other dentists licensed and authorized to provide dental services in the Commonwealth of Puerto Rico, to cover the dental coverage of its health care plans. Defendant's known address is PO Box 192059, San Juan, PR 00919-2059; El Mundo Building, 3rd Floor, 383 F.D. Roosevelt Ave., San Juan, Puerto Rico, 00918-2131; Tel. 787-282-7900.

   10. Codefendant HUMANA INSURANCE OF PUERTO RICO, INC., also known as "HUMANA", is a for-profit corporation organized under the laws of the Commonwealth of Puerto Rico. HUMANA is a health services organization that provides one or more health care plans, in accordance with the definitions of these terms set forth in the Puerto Rico Insurance Code, through free-choice products. HUMANA has subscribed contracts with Plaintiffs, and other dentists licensed and authorized to provide dental services in the Commonwealth of Puerto Rico, to cover the dental coverage of its health care plans. Defendant's known address is PO Box 192059, San Juan, PR 00919-2059; El Mundo Building, 3rd Floor, 383 F.D. Roosevelt Ave., San Juan, Puerto Rico, 00918-2131; Tel. 787-282-7900.

   11. Codefendant MEDICAL CARD SYSTEMS, INC., known as "MCS", is a for-profit corporation organized under the laws of the Commonwealth of Puerto Rico. MCS is a health services organization that provides one or more health care plans, in accordance with the definitions of these terms set forth in the Puerto Rico Insurance Code. MCS has subscribed contracts with Plaintiffs, and other dentists licensed and authorized to provide dental services in the Commonwealth of Puerto Rico, to cover the dental coverage of its health care plans. Defendant's known address is PO Box 9023547, San Juan, PR 00902-3547; MCS Plaza, Ponce de Leon Ave. #255, San Juan, Puerto Rico 00918; Tel. 787-758-2500.

   12. Codefendant MCS HEALTH MANAGEMENT OPTIONS, INC., also known as

"MCS," is a for-profit corporation organized under the laws of the Commonwealth of Puerto Rico. MCS is a health services organization that provides one or more health care plans, in accordance with the definitions of these terms set forth in the Puerto Rico Insurance Code. MCS has subscribed contracts with Plaintiffs, and other dentists licensed and authorized to provide dental services in the Commonwealth of Puerto Rico, to cover the dental coverage of its health care plans. Defendant's known address is PO Box 9023547, San Juan, PR 00902-3547; MCS Plaza, Ponce de Leon Ave. #255; Tel. 787-758-2500.

13. Codefendant MCS ADVANTAGE, INC., also known as "MCS," is a for-profit corporation organized under the laws of the Commonwealth of Puerto Rico. MCS is a health services organization that provides one or more health care plans, in accordance with the definitions of these terms set forth in the Puerto Rico Insurance Code, through coordinated health care products such as advantage plans. MCS has subscribed contracts with Plaintiffs, and other dentists licensed and authorized to provide dental services in the Commonwealth of Puerto Rico, to cover the dental coverage of its health care plans. Defendant's known address is PO Box 9023547, San Juan, PR 00902-3547; MCS Plaza, Ponce de Leon Ave. #255, San Juan, Puerto Rico 00918; Tel. 787-758-2500.

14. Codefendant METROPOLITAN LIFE INSURANCE COMPANY, better known as "METLIFE," is a foreign, for-profit corporation authorized to conduct business under the laws of the Commonwealth of Puerto Rico. METLIFE is a health services organization that provides one or more health care plans, in accordance with the definitions of these terms set forth in the Puerto Rico Insurance Code. METLIFE has subscribed contracts with Plaintiffs, and other dentists licensed and authorized to provide dental services in the Commonwealth of Puerto Rico, to cover the dental coverage of its health care plans. Defendant's known address 654 Muñoz Rivera Ave., Santurce, Puerto Rico, Tel. 787-756-0484.

15. Insurance Companies A, B and C are insurance companies that have issued

policies in favor of all or some of the Defendants that cover all or some of the illegal actions that are the object of this complaint, for which the Defendants are liable to the Plaintiffs and therefore must compensate plaintiffs for these actions with their respective policies.

## IV. FACTS

I.  **PLAINTIFF DR. THOMAS M. MEDINA MEDINA**[2]

   A.  **DEFENDANT TRIPLE S**

1.  On or around the year 1993, Dr. Medina subscribed a dental service provider contract ("hereinafter the "contract"), with defendant Triple S, which was prepared and adopted by said insurance company and pursuant to which Dr. Medina was to provide services to patients covered by an insurance plan issued by Triple S (hereinafter the "patients").

2.  Triple S agreed to pay Dr. Medina for the services and/or procedures performed on the patients as long as the services or procedures were covered by the patient's plan; the services or procedures were available at the time they were rendered; and Dr. Medina filed a claim, which included information required by Triple S, in order to process the same (hereinafter "clean claim") and proceed with the corresponding payment.

3.  The claims filed with the insurance company were to be filed in approved company forms and should include the corresponding ADA CDT code and description, together with the approved company fees.

4.  Triple S agreed that upon receipt of a "clean claim", it would pay Dr. Medina for the services rendered to the patient according the fee schedule approved by said insurance company and within a specified period of time, which period, as of the year 2011, is thirty (30) days.

5.  The terms of the relationship also provides for the procedures to be followed in case of a claim adjustment request.

6.  In addition, pursuant to the terms of the relationship, if the Dentist received precertification from Triple S that the procedure constitutes a covered service, Triple S would accept such determination for payment purposes, subject to dental audit.

7.  The relationship between the parties does not allow Triple S to change, modify and/or substitute the procedures rendered by Dr. Medina to patients.

8.  During the term of the relationship, Dr. Medina has complied with the terms agreed upon with Triple S.  Triple S, on the other hand, has failed to comply with its obligation to

---

[2] Refer to **Exhibit 1**, Declaration of Dr. Thomas M. Medina Medina in support of the claim for breach of contract

honor the contracted CDT codes for covered services and to pay Dr. Medina as agreed to by the parties.

9. To the best of Dr. Medina's recollection, since on or around the year 1998, Triple S has incurred in a practice whereby Triple S substitutes procedures and/or services rendered to patients with Triple S insurance plan coverage and billed to the insurance company for other procedures, which are not the contracted covered services rendered and billed by the dental provider, and may be less costly.  This practice violates Triple S' obligation to honor the CDT codes for covered services and pay for said services and/or procedures rendered by the dental provider, in this case Dr. Medina.

10. To the best of Dr. Medina's understanding, substitution of one procedure for another when proceeding with payment of the fees corresponding to the services rendered to patients ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

11. In addition, to the best of Dr. Medina's recollection, since on or around the year 1998, Triple S has incurred in a practice whereby it automatically denies payment of contracted covered services without any valid reason.  This practice violates Triple S' obligation to pay for services and/or procedures rendered by the dental provider, in this case Dr. Medina.

12. An example of this practice is the denial of payment of one of two (2) one surface posterior restorations (D2140), performed on the same surface on the same date, which restorations do not extend to any other of the five surface classifications, and/or the substitution of two (2) one surface posterior restorations (D2140) procedures, performed on the same surface on the same date, which restorations do not extend to any other of the five surface classifications for a (D2150), which procedure was not rendered and/or claimed by the dental provider, and may result in payment of lesser amount than the one claimed by the dental provider.

13. To the best of Dr. Medina's recollection, since on or around the year 1998, Triple S has incurred in a practice whereby, when receiving a claim for two (2) one surface posterior restorations (D2140), performed on the same surface on the same date, which restorations do not extend to any other of the five surface classifications, Triple S automatically denies payment of one (1) of the claimed one surface restorations (D2140) procedures and/or proceeds with payment of a two-surface posterior restorations procedure (D2150), which procedure was not rendered and/or claimed by the dental provider, and may result in payment of a lesser amount than the one claimed by the dental provider, in this case Dr. Medina.  This practice violates Triple S' obligation to honor the CDT codes for covered services and pay for said services and/or procedures rendered by Dr. Medina.

14. To the best of Dr. Medina's understanding, substitution of one procedure for another when proceeding with payment of the fees corresponding to the services rendered to patients ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

15. To the best of Dr. Medina's understanding, denial of payment of a procedure and/or service rendered to patients without a valid reason ultimately constitutes a breach of the terms of the relationship existing between the parties.

16. One-Surface Posterior Restorations (D2140), Two-Surface Posterior Restorations (D2150), and Three-Surface Posterior Restorations (D2160) are included in Triple S' manuals for dental providers as procedures approved by said insurance company, with separate and distinct CDT codes and fees.

17. A one-surface posterior restoration (D2140) is one in which the restoration involves only one of the five surface classifications (mesial. distal, occlusal, lingual or facial, including buccal or labial).

18. A two-surface posterior restoration (D2150) is one in which the restoration extends to two of the five surface classifications.

19. A three-surface posterior restoration (D2160) is one in which the restoration extends to three of the five surface classifications.

20. One-Surface Posterior Restorations (D2140), Two-Surface Posterior Restorations (D2150) and Three-Surface Posterior Restorations (D2160) procedures entail different services from the dental provider.

21. To the best of Dr. Medina's understanding, when substituting two (2) One-Surface Posterior Restorations (D2140), performed on the same surface on the same date, which restorations do not extend to any other of the five surface classifications, for a Two-Surface Posterior Restorations (D2150) procedure, the defendant insurance company is not honoring the contracted covered services and not paying the dental provider for the services rendered to the patient and billed to said insurance company.

22. As a result of the change of the CDT code by the defendant insurance company, the remuneration received by the dental provider for the Two-Surface Posterior Restorations (D2150) procedure is less than that of the two (2) or more One-Surface Posterior Restorations (D2140) procedures, performed on the same surface on the same date, which restorations do not extend to any other of the five surface classifications.

23. To the best of Dr. Medina's understanding, the change of the CDT code for provided covered services and payment for a Two-Surface Posterior Restorations (D2150) procedure instead of the two (2) One-Surface Posterior Restorations (D2140)

procedures, performed on the same surface on the same date, which restorations do not extend to any other of the five surface classifications, ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

24. The above stated practice breaches the terms of the relationship existing between the parties.

25. The above stated practice has resulted in benefits for Triple S, while resulting in detriment to Dr. Medina.

26. According to the Triple S manuals for general dentists and/or fee schedules during the years 1998 to 2013, the approximate amount covered for a One-Surface Posterior Restorations (D2140) is $25.00, and the approximate amount covered for a Two-Surface Posterior Restorations (D2150) is $33.00.

27. The substitution of Two-Surface Posterior Restorations (D2150) procedure for two (2) One-Surface Posterior Restorations (D2140) procedures, performed on the same surface on the same date, which restorations do not extend to any other of the five surface classifications, constitutes an approximate savings of $ 17.00 for the insurance company.

28. Payment of only one (1) One-Surface Posterior Restorations (D2140) procedure, instead of two (2) One-Surface Posterior Restorations (D2140) procedures, performed on the same surface on the same date, which restorations do not extend to any other of the five surface classifications, constitutes an approximate savings of $25.00 for the insurance company.

29. During the years 1998 through 2013, Dr. Medina submitted an average of 50 claims per year for two (2) One-Surface Posterior Restorations (D2140) procedures, performed on the same surface on the same date, which restorations do not extend to any other of the five surface classifications to Triple S.  Payment by Triple S only for one (1) One-Surface Posterior Restorations (D2140) instead of the two (2) One-Surface Posterior Restorations (D2140) procedures, performed on the same surface on the same date, which restorations do not extend to any other of the five surface classifications, resulted in an approximate savings of $10,000.00 for the insurance company, amount that should have been paid to Dr. Medina for the services and/or procedures rendered to patients with Triple S dental plan coverage.    Payment by Triple S for Two-Surface Posterior Restorations (D2150) instead of the two (2) One-Surface Posterior Restorations (D2140) procedures, performed on the same surface on the same date, which restorations do not extend to any other of the five surface classifications, resulted in an approximate savings of $13,600.00 for the insurance company, amount that should have been paid to Dr. Medina for the services and/or procedures rendered to patients with Triple S dental plan coverage.

## II. PLAINTIFF DR. ISABEL DEL VALLE[3]

## A. DEFENDANT DELTA DENTAL

30. On or around the year 1991, Dr. Del Valle subscribed a dental service provider contract ("hereinafter the "contract") with defendant Delta Dental, which was prepared and adopted by said insurance company and pursuant to which Dr. Del Valle was to provide services to patients covered by an insurance plan issued by Delta Dental (hereinafter the "patients").

31. Delta Dental agreed to pay Dr. Del Valle for the services and/or procedures rendered to patients as long as the services or procedures were covered by the patient's plan; the services or procedures were available at the time they were rendered; and Dr. Del Valle filed a claim, which included information required by Delta Dental, in order to process the same (hereinafter "clean claim") and proceed with the corresponding payment.

32. The claims filed with the insurance company were to be filed in approved company forms and should include the corresponding ADA CDT code and description, together with the approved company fees.

33. Delta Dental agreed that upon receipt of a "clean claim", it would pay Dr. Del Valle for the services rendered to the patient according the fee schedule approved by said insurance company and within a specified period of time, which period, as of the year 2011, is thirty (30) days.

34. The terms of the relationship also provides for the procedures to be followed in case of a claim adjustment request.

35. In addition, pursuant to the terms of the relationship, if the Dentist received precertification from Delta Dental that the procedure constitutes a covered service, Delta Dental would accept such determination for payment purposes, subject to dental audit.

36. The relationship between the parties does not allow Delta Dental to change, modify and/or substitute the procedures rendered by Dr. Del Valle to patients.

37. During the term of the relationship, Dr. Del Valle has complied with the terms agreed upon with Delta Dental. Delta Dental, on the other hand, has failed to comply with its obligation to honor the contracted CDT codes for covered services and to pay Dr. Del Valle as agreed to by the parties.

38. To the best of Dr. Del Valle's recollection, since on or around the year 1999, Delta Dental has incurred in a practice whereby Delta Dental substitutes procedures and/or services rendered to patients with Delta Dental insurance plan coverage and billed to the insurance company for other procedures, which are not the contracted covered services

---

[3] Refer to **Exhibit 2**, Declaration of Dr. Isabel Del Valle Díaz in support of the claim for breach of contract

rendered and billed by the dental provider, and may be less costly. This practice violates Delta Dental's obligation to honor the CDT codes for covered services and pay for said services and/or procedures rendered by the dental provider, in this case Dr. Del Valle.

39. To the best of Dr. Del Valles's understanding, substitution of one procedure for another when proceeding with payment of the fees corresponding to the services rendered to patients ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

40. An example of this practice is the substitution of Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures for the Intraoral-Complete Series (including bitewings) (D0210) procedure.

41. To the best of Dr. Del Valle's recollection, since on or around the year 1999, Delta Dental has incurred in a practice whereby when receiving a claim from a dental provider, which includes Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, Delta Dental proceeds to substitute the same for a Intraoral-Complete Series (including bitewings) (D0210) procedure.

42. Panoramic Film (D0330), Bitewings-Two Films (D0272), and Intraoral-Complete Series (including bitewings) (D0210) procedures are included in Delta Dental's manuals for dental providers as procedures approved by said insurance company, with separate and distinct CDT codes and fees.

43. Panoramic radiographs (D0330) is defined as an extraoral projection whereby the entire mandible, maxilla, teeth and other nearby structures are portrayed on a single image, as if the jaws were flattened out.

44. Bitewing radiographs (D0272) is defined as an interproximal radiographic view of the coronal portion of the tooth/teeth. A form of dental radiograph that may be taken with the long axis of the image oriented either horizontally or vertically, that reveals approximately the coronal halves of the maxillary and mandibular teeth and portions of the interdental alveolar septa on the same image.

45. Intraoral radiographs complete series (including bitewings) (D0210) is defined as a radiographic survey of the whole mouth, usually consisting of 14-22 periapical and posterior bitewing images intended to display the crowns and roots of all teeth, periapical areas and alveolar bone.

46. The Panoramic Film (D0330), Bitewings-Two Films (D0272), and Intraoral-Complete Series (including bitewings) (D0210) procedures entail different services from the dental provider.

47. To the best of Dr. Del Valle's understanding, when substituting Intraoral-Complete Series (including bitewings) (D0210) procedure for the Panoramic Film (D0330) and

Bitewings-Two Films (D0272) procedures, the defendant insurance company is not honoring the contracted covered services and not paying the dental provider for the services rendered to the patient and billed to said insurance company.

48. As a result of the change of the CDT code by the defendant insurance company, the remuneration received by the dental provider for the Intraoral-Complete Series (including bitewings) (D0210) procedure is less than that of the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures.

49. To the best of Dr. Del Valle's understanding, the change of the CDT code for provided covered services and payment for a Intraoral-Complete Series (including bitewings) (D0210) procedure instead of the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

50. The above stated practice breaches the terms of the relationship existing between the parties.

51. The above stated practice has resulted in benefits for Delta Dental, while resulting in detriment to Dr. Del Valle.

52. According to the Delta Dental manuals for general dentists and/or fee schedules during the years 1999 through 2009, the amount covered for Intraoral-Complete Series (including bitewings) (D0210) was $50.00, the amount covered for Panoramic Film (D0330) was $45.00, and the amount covered for Bitewings-Two Films (D0272) was $21.00.

53. The substitution of Intraoral-Complete Series (including bitewings) (D0210) for the Panoramic Film (D0330) and Bitewings-Two Films (D0272), constitutes an approximate savings of $16.00 for the insurance company.

54. During the period of 1999 through 2009, Dr. Del Valle submitted an average of 382 claims for Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, which, when substituted for a Intraoral-Complete Series (including bitewings) (D0210) resulted in an approximate savings of $6,112.00 for the insurance company, amount that should have been paid to Dr. Del Valle for the services and/or procedures rendered to patients with Delta Dental plan coverage.

## B. DEFENDANT HUMANA

55. On or around the year 2000, Dr. Del Valle subscribed a dental service provider contract ("hereinafter the "contract") with defendant Humana, which was prepared and adopted by said insurance company and pursuant to which Dr. Del Valle was to provide services to patients covered by an insurance plan issued by Humana (hereinafter the "patients").

56. Humana agreed to pay Dr. Del Valle for the services and/or procedures rendered to patients as long as the services or procedures were covered by the patient's plan; the services or procedures were available at the time they were rendered; and Dr. Del Valle filed a claim, which included information required by Humana, in order to process the same (hereinafter "clean claim") and proceed with the corresponding payment.

57. The claims filed with the insurance company were to be filed in approved company forms and should include the corresponding ADA CDT code and description, together with the approved company fees.

58. Humana agreed that upon receipt of a "clean claim", it would pay Dr. Del Valle for the services rendered to the patient according the fee schedule approved by said insurance company and within a specified period of time, which period, as of the year 2011, is thirty (30) days.

59. The terms of the relationship also provides for the procedures to be followed in case of a claim adjustment request.

60. In addition, pursuant to the terms of the relationship, if the Dentist received precertification from Humana that the procedure constitutes a covered service, Humana would accept such determination for payment purposes, subject to dental audit.

61. The relationship between the parties does not allow Humana to change, modify and/or substitute the procedures rendered by Dr. Del Valle to patients.

62. During the term of the relationship, Dr. Del Valle has complied with the terms agreed upon with Humana. Humana, on the other hand, has failed to comply with its obligation to honor the contracted CDT codes for covered services and to pay Dr. Del Valle as agreed to by the parties.

63. To the best of Dr. Del Valle's recollection, since on or around the year 2000, Humana has incurred in a practice whereby Humana substitutes procedures and/or services rendered to patients with Humana insurance plan coverage and billed to the insurance company for other procedures, which are not the contracted covered services rendered and billed by the dental provider, and may be less costly. This practice violates Humana's obligation to honor the CDT codes for covered services and pay for said services and/or procedures rendered by the dental provider, in this case Dr. Del Valle.

64. To the best of Dr. Del Valles's understanding, substitution of one procedure for another when proceeding with payment of the fees corresponding to the services rendered to patients ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

65. An example of this practice is the substitution of Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures for the Intraoral-Complete Series (including bitewings) (D0210) procedure.

66. To the best of Dr. Del Valle's recollection, since on or around the year 2000, Humana has incurred in a practice whereby when receiving a claim from a dental provider, which includes Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, Humana proceeds to substitute the same for a Intraoral-Complete Series (including bitewings) (D0210) procedure.

67. Panoramic Film (D0330), Bitewings-Two Films (D0272), and Intraoral-Complete Series (including bitewings) (D0210) procedures are included in Humana's manuals for dental providers as procedures approved by said insurance company, with separate and distinct CDT codes and fees.

68. Panoramic radiographs (D0330) is defined as an extraoral projection whereby the entire mandible, maxilla, teeth and other nearby structures are portrayed on a single image, as if the jaws were flattened out.

69. Bitewing radiographs (D0272) is defined as an interproximal radiographic view of the coronal portion of the tooth/teeth. A form of dental radiograph that may be taken with the long axis of the image oriented either horizontally or vertically, that reveals approximately the coronal halves of the maxillary and mandibular teeth and portions of the interdental alveolar septa on the same image.

70. Intraoral radiographs complete series (including bitewings) (D0210) is defined as a radiographic survey of the whole mouth, usually consisting of 14-22 periapical and posterior bitewing images intended to display the crowns and roots of all teeth, periapical areas and alveolar bone.

71. The Panoramic Film (D0330), Bitewings-Two Films (D0272), and Intraoral-Complete Series (including bitewings) (D0210) procedures entail different services from the dental provider.

72. To the best of Dr. Del Valle's understanding, when substituting Intraoral-Complete Series (including bitewings) (D0210) procedure for the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, the defendant insurance company is not honoring the contracted covered services and not paying the dental provider for the services rendered to the patient and billed to said insurance company.

73. As a result of the change of the CDT code by the defendant insurance company, the remuneration received by the dental provider for the Intraoral-Complete Series (including bitewings) (D0210) procedure is less than that of the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures.

74. To the best of Dr. Del Valle's understanding, the change of the CDT code for provided covered services and payment for a Intraoral-Complete Series (including bitewings)

(D0210) procedure instead of the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

75. The above stated practice breaches the terms of the relationship existing between the parties.

76. The above stated practice has resulted in benefits for Humana, while resulting in detriment to Dr. Del Valle.

77. According to the Humana manuals for general dentists and/or fee schedules during the years 2000 through 2013, the amount covered for Intraoral-Complete Series (including bitewings) (D0210) was $44.00, the amount covered for Panoramic Film (D0330) was $30.00, and the amount covered for Bitewings-Two Films (D0272) was $15.00.

78. The substitution of Intraoral-Complete Series (including bitewings) (D0210) for the Panoramic Film (D0330) and Bitewings-Two Films (D0272), constitutes a savings of $1.00 for the insurance company.

79. During the years 2000 through 2013, Dr. Del Valle submitted an average of 123 claims for Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, which, when substituted for a Intraoral-Complete Series (including bitewings) (D0210) resulted in an approximate savings of $123.00 for the insurance company, amount that should have been paid to Dr. Del Valle for the services and/or procedures rendered to patients with Humana plan coverage.

## C. DEFENDANT MCS

80. On or around July 18, 1991, Dr. Del Valle subscribed a dental service provider contract ("hereinafter the "contract") with defendant MCS, which was prepared and adopted by said insurance company and pursuant to which Dr. Del Valle was to provide services to patients covered by an insurance plan issued by MCS (hereinafter the "patients"). An amended service provider contract, prepared and adopted by said insurance company, was subscribed on or around April 10, 2004.

81. MCS agreed to pay Dr. Del Valle for the services and/or procedures rendered to patients as long as the services or procedures were covered by the patient's plan; the services or procedures were available at the time they were rendered; and Dr. Del Valle filed a claim, which included information required by MCS, in order to process the same (hereinafter "clean claim") and proceed with the corresponding payment.

82. The claims filed with the insurance company were to be filed in approved company forms and should include the corresponding ADA CDT code and description, together with the approved company fees.

83. MCS agreed that upon receipt of a "clean claim", it would pay Dr. Del Valle for the services rendered to the patient according the fee schedule approved by said insurance company and within a specified period of time, which period, as of the year 2011, is thirty (30) days.

84. The terms of the relationship also provides for the procedures to be followed in case of a claim adjustment request.

85. In addition, pursuant to the terms of the relationship, if the Dentist received precertification from MCS that the procedure constitutes a covered service, MCS would accept such determination for payment purposes, subject to dental audit.

86. The relationship between the parties does not allow MCS to change, modify and/or substitute the procedures rendered by Dr. Del Valle to patients.

87. During the term of the relationship, Dr. Del Valle has complied with the terms agreed upon with MCS. MCS, on the other hand, has failed to comply with its obligation to honor the contracted CDT codes for covered services and to pay Dr. Del Valle as agreed to by the parties.

88. To the best of Dr. Del Valle's recollection, since on or around the year 1999, MCS has incurred in a practice whereby MCS substitutes procedures and/or services rendered to patients with MCS insurance plan coverage and billed to the insurance company for other procedures, which are not the contracted covered services rendered and billed by the dental provider, and may be less costly. This practice violates MCS' obligation to honor the CDT codes for covered services and pay for said services and/or procedures rendered by the dental provider, in this case Dr. Del Valle.

89. To the best of Dr. Del Valle's understanding, substitution of one procedure for another when proceeding with payment of the fees corresponding to the services rendered to patients ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

90. An example of this practice is the substitution of Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures for the Intraoral-Complete Series (including bitewings) (D0210) procedure.

91. To the best of Dr. Del Valle's recollection, since on or around the year 1999, MCS has incurred in a practice whereby when receiving a claim from a dental provider, which includes Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, MCS proceeds to substitute the same for a Intraoral-Complete Series (including bitewings) (D0210) procedure.

92. Panoramic Film (D0330), Bitewings-Two Films (D0272), and Intraoral-Complete Series (including bitewings) (D0210) procedures are included in MCS' manuals for dental providers as procedures approved by said insurance company, with separate and distinct CDT codes and fees.

93. Panoramic radiographs (D0330) is defined as an extraoral projection whereby the entire mandible, maxilla, teeth and other nearby structures are portrayed on a single image, as if the jaws were flattened out.

94. Bitewing radiographs (D0272) is defined as an interproximal radiographic view of the coronal portion of the tooth/teeth. A form of dental radiograph that may be taken with the long axis of the image oriented either horizontally or vertically, that reveals approximately the coronal halves of the maxillary and mandibular teeth and portions of the interdental alveolar septa on the same image.

95. Intraoral radiographs complete series (including bitewings) (D0210) is defined as a radiographic survey of the whole mouth, usually consisting of 14-22 periapical and posterior bitewing images intended to display the crowns and roots of all teeth, periapical areas and alveolar bone.

96. The Panoramic Film (D0330), Bitewings-Two Films (D0272), and Intraoral-Complete Series (including bitewings) (D0210) procedures entail different services from the dental provider.

97. To the best of Dr. Del Valle's understanding, when substituting Intraoral-Complete Series (including bitewings) (D0210) procedure for the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, the defendant insurance company is not honoring the contracted covered services and not paying the dental provider for the services rendered to the patient and billed to said insurance company.

98. As a result of the change of the CDT code by the defendant insurance company the remuneration received by the dental provider for the Intraoral-Complete Series (including bitewings) (D0210) procedure is less than that of the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures.

99. To the best of Dr. Del Valle's understanding, the change of the CDT code for provided covered services and payment for a Intraoral-Complete Series (including bitewings) (D0210) procedure instead of the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

100.     The above stated practice breaches the terms of the relationship existing between the parties.

101.     The above stated practice has resulted in benefits for MCS, while resulting in detriment to Dr. Del Valle.

102.    According to the MCS dental manuals for general dentists and/or fee schedules during the years 1999 through 2013, the amount covered for Intraoral-Complete Series (including bitewings) (D0210) fluctuated between $41.00 and $44.00, the amount covered for Panoramic Film (D0330) is $35.00, and the amount covered for Bitewings-Two Films (D0272) is $15.00.

103.    The substitution of Intraoral-Complete Series (including bitewings) (D0210) for the Panoramic Film (D0330) and Bitewings-Two Films (D0272), constitutes a savings of $9.00 and/or $6.00 for the insurance company.

104.    During the period of 1999 through 2013, Dr. Del Valle submitted an average of 164 claims for Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedure, which when substituted for a Intraoral-Complete Series (including bitewings) (D0210) resulted in an approximate savings of $1,476.00 and/or $984.00 for the insurance company, amount that should have been paid to Dr. Del Valle for the services and/or procedures rendered to patients with MCS plan coverage.

## D. DEFENDANT METLIFE

105.    On or around the year 1991, Dr. Del Valle subscribed a dental service provider contract ("hereinafter the "contract") with defendant MetLife, which was prepared and adopted by said insurance company and pursuant to which Dr. Del Valle was to provide services to patients covered by an insurance plan issued by MetLife (hereinafter the "patients").

106.    MetLife agreed to pay Dr. Del Valle for the services and/or procedures rendered to patients as long as the services or procedures were covered by the patient's plan; the services or procedures were available at the time they were rendered; and Dr. Del Valle filed a claim, which included information required by MetLife, in order to process the same (hereinafter "clean claim") and proceed with the corresponding payment.

107.    The claims filed with the insurance company were to be filed in approved company forms and should include the corresponding ADA CDT code and description, together with the approved company fees.

108.    MetLife agreed that upon receipt of a "clean claim", it would pay Dr. Del Valle for the services rendered to the patient according the fee schedule approved by said insurance company and within a specified period of time, which period, as of the year 2011, is thirty (30) days.

109.    The terms of the relationship also provides for the procedures to be followed in case of a claim adjustment request.

110.     In addition, pursuant to the terms of the relationship, if the Dentist received precertification from MetLife that the procedure constitutes a covered service, MetLife Dental would accept such determination for payment purposes, subject to dental audit.

111.     The relationship between the parties does not allow MetLife to change, modify and/or substitute the procedures rendered by Dr. Del Valle to patients.

112.     During the term of the relationship, Dr. Del Valle has complied with the terms agreed upon with MetLife. MetLife, on the other hand, has failed to comply with its obligation to honor the contracted CDT codes for covered services and to pay Dr. Del Valle as agreed to by the parties.

113.     To the best of Dr. Del Valle's recollection, since on or around the year 1999, MetLife has incurred in a practice whereby MetLife substitutes procedures and/or services rendered to patients with MetLife insurance plan coverage and billed to the insurance company for other procedures, which are not the contracted covered services rendered and billed by the dental provider, and may be less costly. This practice violates MetLife's obligation to honor the CDT codes for covered services and pay for said services and/or procedures rendered by the dental provider, in this case Dr. Del Valle.

114.     To the best of Dr. Del Valles's understanding, substitution of one procedure for another when proceeding with payment of the fees corresponding to the services rendered to patients ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

115.     An example of this practice is the substitution of Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures for the Intraoral-Complete Series (including bitewings) (D0210) procedure.

116.     To the best of Dr. Del Valle's recollection, since on or around the year 1999, MetLife has incurred in a practice whereby when receiving a claim from a dental provider, which includes Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, MetLife proceeds to substitute the same for a Intraoral-Complete Series (including bitewings) (D0210) procedure.

117.     Panoramic Film (D0330), Bitewings-Two Films (D0272), and Intraoral-Complete Series (including bitewings) (D0210) procedures are included in MetLife's manuals for dental providers as procedures approved by said insurance company, with separate and distinct CDT codes and fees.

118.     Panoramic radiographs (D0330) is defined as an extraoral projection whereby the entire mandible, maxilla, teeth and other nearby structures are portrayed on a single image, as if the jaws were flattened out.

119.    Bitewing radiographs (D0272) is defined as an interproximal radiographic view of the coronal portion of the tooth/teeth. A form of dental radiograph that may be taken with the long axis of the image oriented either horizontally or vertically, that reveals approximately the coronal halves of the maxillary and mandibular teeth and portions of the interdental alveolar septa on the same image.

120.    Intraoral radiographs complete series (including bitewings) (D0210) is defined as a radiographic survey of the whole mouth, usually consisting of 14-22 periapical and posterior bitewing images intended to display the crowns and roots of all teeth, periapical areas and alveolar bone.

121.    The Panoramic Film (D0330), Bitewings-Two Films (D0272), and Intraoral-Complete Series (including bitewings) (D0210) procedures entail different services from the dental provider.

122.    To the best of Dr. Del Valle's understanding, when substituting Intraoral-Complete Series (including bitewings) (D0210) procedure for the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, the defendant insurance company is not honoring the contracted covered services and not paying the dental provider for the services rendered to the patient and billed to said insurance company.

123.    As a result of the change of the CDT code by the defendant insurance company, the remuneration received by the dental provider for the Intraoral-Complete Series (including bitewings) (D0210) procedure is less than that of the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures.

124.    To the best of Dr. Del Valle's understanding, the change of the CDT code for provided covered services and payment for a Intraoral-Complete Series (including bitewings) (D0210) procedure instead of the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

125.    The above stated practice breaches the terms of the relationship existing between the parties.

126.    The above stated practice has resulted in benefits for MetLife, while resulting in detriment to Dr. Del Valle.

127.    According to the MetLife dental manuals for general dentists and/or fee schedules during the years 1999 through 2007, the amount covered for Intraoral-Complete Series (including bitewings) (D0210) fluctuated between $45.00 and $59.00, the amount covered for Panoramic Film (D0330) was $45.00, and the amount covered for Bitewings-Two Films (D0272) was $21.00.

128.     The substitution of Intraoral-Complete Series (including bitewings) (D0210) for the Panoramic Film (D0330) and Bitewings-Two Films (D0272), constitutes a savings of $21.00 and/or $7.00 the insurance company.

129.     During the period of 1999 through 2007, Dr. Del Valle submitted an average of 80 claims for Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, which, when substituted for a Intraoral-Complete Series (including bitewings) (D0210) resulted in an approximate savings of $1,680.00 and/or $560.00 for the insurance company, amount that should have been paid to Dr. Del Valle for the services and/or procedures rendered to patients with MetLife plan coverage.

## III. PLAINTIFF DR. NORMA MARTÍNEZ[4]

## A. DEFENDANT DELTA DENTAL

130.     On or around the year 1988, Dr. Martínez subscribed a dental service provider contract ("hereinafter the "contract") with defendant Delta Dental, which was prepared and adopted by said insurance company and pursuant to which Dr. Martínez was to provide services to patients covered by an insurance plan issued by Delta Dental (hereinafter the "patients").

131.     Delta Dental agreed to pay Dr. Martínez for the services and/or procedures rendered to patients as long as the services or procedures were covered by the patient's plan; the services or procedures were available at the time they were rendered; and Dr. Martínez filed a claim, which included information required by Delta Dental, in order to process the same (hereinafter "clean claim") and proceed with the corresponding payment.

132.     The claims filed with the insurance company were to be filed in approved company forms and should include the corresponding ADA CDT code and description, together with the approved company fees.

133.     Delta Dental agreed that upon receipt of a "clean claim", it would pay Dr. Martínez for the services rendered to the patient according the fee schedule approved by said insurance company and within a specified period of time, which period, as of the year 2011, is thirty (30) days.

134.     The terms of the relationship also provides for the procedures to be followed in case of a claim adjustment request.

135.     In addition, pursuant to the terms of the relationship, if the Dentist received precertification from Delta Dental that the procedure constitutes a covered service, Delta Dental would accept such determination for payment purposes, subject to dental audit.

---

[4] Refer to **Exhibit 3**, Declaration of Dr. Norma Martínez in support of the claim for breach of contract

136.     The relationship between the parties does not allow Delta Dental to change, modify and/or substitute the procedures rendered by Dr. Martínez to patients.

137.     During the term of the relationship, Dr. Martínez has complied with the terms agreed upon with Delta Dental.  Delta Dental, on the other hand, has failed to comply with its obligation to honor the contracted CDT codes for covered services and to pay Dr. Martínez as agreed to by the parties.

138.     To the best of Dr. Martínez' recollection, since on or around the year 2007, Delta Dental has incurred in a practice whereby Delta Dental substitutes procedures and/or services rendered to patients with Delta Dental insurance plan coverage and billed to the insurance company for other procedures, which are not the contracted covered services rendered and billed by the dental provider, and may be less costly.  This practice violates Delta Dental's obligation to honor the CDT codes for covered services and pay for said services and/or procedures rendered by the dental provider, in this case Dr. Martínez.

139.     To the best of Dr. Martínez' understanding, substitution of one procedure for another when proceeding with payment of the fees corresponding to the services rendered to patients ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

140.     An example of this practice is the substitution of Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures for the Intraoral-Complete Series (including bitewings) (D0210) procedure.

141.     To the best of Dr. Martínez' recollection, since on or around the year 2007, Delta Dental has incurred in a practice whereby when receiving a claim from a dental provider, which includes Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, Delta Dental proceeds to substitute the same for a Intraoral-Complete Series (including bitewings) (D0210) procedure.

142.     Panoramic Film (D0330), Bitewings-Two Films (D0272), and Intraoral-Complete Series (including bitewings) (D0210) procedures are included in Delta Dental's manuals for dental providers as procedures approved by said insurance company, with separate and distinct CDT codes and fees.

143.     Panoramic radiographs (D0330) is defined as an extraoral projection whereby the entire mandible, maxilla, teeth and other nearby structures are portrayed on a single image, as if the jaws were flattened out.

144.     Bitewing radiographs (D0272) is defined as an interproximal radiographic view of the coronal portion of the tooth/teeth.  A form of dental radiograph that may be taken with the long axis of the image oriented either horizontally or vertically, that reveals approximately the coronal halves of the maxillary and mandibular teeth and portions of

the interdental alveolar septa on the same image.

145.    Intraoral radiographs complete series (including bitewings) (D0210) is defined as a radiographic survey of the whole mouth, usually consisting of 14-22 periapical and posterior bitewing images intended to display the crowns and roots of all teeth, periapical areas and alveolar bone.

146.    The Panoramic Film (D0330), Bitewings-Two Films (D0272), and Intraoral-Complete Series (including bitewings) (D0210) procedures entail different services from the dental provider.

147.    To the best of Dr. Martínez' understanding, when substituting Intraoral-Complete Series (including bitewings) (D0210) procedure for the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, the defendant insurance company is not honoring the contracted covered services and not paying the dental provider for the services rendered to the patient and billed to said insurance company.

148.    As a result of the change of the CDT code by the defendant insurance company, the remuneration received by the dental provider for the Intraoral-Complete Series (including bitewings) (D0210) procedure is less than that of the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures.

149.    To the best of Dr. Martínez' understanding, the change of the CDT code for provided covered services and payment for a Intraoral-Complete Series (including bitewings) (D0210) procedure instead of the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

150.    The above stated practice breaches the terms of the relationship existing between the parties.

151.    The above stated practice has resulted in benefits for Delta Dental, while resulting in detriment to Dr. Martínez.

152.    According to the Delta Dental manuals for general dentists and/or fee schedules during the years 2007 to 2013, the amount covered for Intraoral-Complete Series (including bitewings) (D0210) is $45.00, the amount covered for Panoramic Film (D0330) is $35.00, and the amount covered for Bitewings-Two Films (D0272) is $15.00.

153.    The substitution of Intraoral-Complete Series (including bitewings) (D0210) for the Panoramic Film (D0330) and Bitewings-Two Films (D0272), constitutes an approximate savings of $5.00 for the insurance company.

154.    During the term of the relationship, Dr. Martínez submitted an average of 400 claims per year for Panoramic Film (D0330) and Bitewings-Two Films (D0272)

procedures, which when substituted for a Intraoral-Complete Series (including bitewings) (D0210) resulted in an approximate savings of $12,000.00 for the insurance company, amount that should have been paid to Dr. Martínez for the services and/or procedures rendered to patients with Delta Dental plan coverage.

## B. DEFENDANT MCS

155.    On or around the year 1998, Dr. Martínez subscribed a dental service provider contract ("hereinafter the "contract") with defendant MCS, which was prepared and adopted by said insurance company and pursuant to which Dr. Martínez was to provide services to patients covered by an insurance plan issued by MCS (hereinafter the "patients").

156.    MCS agreed to pay Dr. Martínez for the services and/or procedures rendered to patients as long as the services or procedures were covered by the patient's plan; the services or procedures were available at the time they were rendered; and Dr. Martínez filed a claim, which included information required by MCS, in order to process the same (hereinafter "clean claim") and proceed with the corresponding payment.

157.    The claims filed with the insurance company were to be filed in approved company forms and should include the corresponding ADA CDT code and description, together with the approved company fees.

158.    MCS agreed that upon receipt of a "clean claim", it would pay Dr. Martínez for the services rendered to the patient according the fee schedule approved by said insurance company and within a specified period of time, which period, as of the year 2011, is thirty (30) days.

159.    The terms of the relationship also provides for the procedures to be followed in case of a claim adjustment request.

160.    In addition, pursuant to the terms of the relationship, if the Dentist received precertification from MCS that the procedure constitutes a covered service, MCS would accept such determination for payment purposes, subject to dental audit.

161.    The relationship between the parties does not allow MCS to change, modify and/or substitute the procedures rendered by Dr. Martínez to patients.

162.    During the term of the relationship, Dr. Martínez has complied with the terms agreed upon with MCS.  MCS, on the other hand, has failed to comply with its obligation to honor the contracted CDT codes for covered services and to pay Dr. Martínez as agreed to by the parties.

163.    To the best of Dr. Martínez' recollection, since on or around the year 2006, MCS has incurred in a practice whereby MCS substitutes procedures and/or services rendered to patients with MCS insurance plan coverage and billed to the insurance

company for other procedures, which are not the contracted covered services rendered and billed by the dental provider, and may be less costly. This practice violates MCS' obligation to honor the CDT codes for covered services and pay for said services and/or procedures rendered by the dental provider, in this case Dr. Martínez.

164.     To the best of Dr. Martínez' understanding, substitution of one procedure for another when proceeding with payment of the fees corresponding to the services rendered to patients ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

165.     An example of this practice is the substitution of Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures for the Intraoral-Complete Series (including bitewings) (D0210) procedure.

166.     To the best of Dr. Martínez' recollection, since on or around the year 2006, MCS has incurred in a practice whereby when receiving a claim from a dental provider, which includes Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, MCS proceeds to substitute the same for a Intraoral-Complete Series (including bitewings) (D0210) procedure.

167.     Panoramic Film (D0330), Bitewings-Two Films (D0272), and Intraoral-Complete Series (including bitewings) (D0210) procedures are included in MCS' manuals for dental providers as procedures approved by said insurance company, with separate and distinct CDT codes and fees.

168.     Panoramic radiographs (D0330) is defined as an extraoral projection whereby the entire mandible, maxilla, teeth and other nearby structures are portrayed on a single image, as if the jaws were flattened out.

169.     Bitewing radiographs (D0272) is defined as an interproximal radiographic view of the coronal portion of the tooth/teeth. A form of dental radiograph that may be taken with the long axis of the image oriented either horizontally or vertically, that reveals approximately the coronal halves of the maxillary and mandibular teeth and portions of the interdental alveolar septa on the same image.

170.     Intraoral radiographs complete series (including bitewings) (D0210) is defined as a radiographic survey of the whole mouth, usually consisting of 14-22 periapical and posterior bitewing images intended to display the crowns and roots of all teeth, periapical areas and alveolar bone.

171.     The Panoramic Film (D0330), Bitewings-Two Films (D0272), and Intraoral-Complete Series (including bitewings) (D0210) procedures entail different services from the dental provider.

172.     To the best of Dr. Martínez' understanding, when substituting Intraoral-Complete Series (including bitewings) (D0210) procedure for the Panoramic Film (D0330) and

Bitewings-Two Films (D0272) procedures, the defendant insurance company is not honoring the contracted covered services and not paying the dental provider for the services rendered to the patient and billed to said insurance company.

173.     As a result of the change of the CDT code by the defendant insurance company, the remuneration received by the dental provider for the Intraoral-Complete Series (including bitewings) (D0210) procedure is less than that of the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures.

174.     To the best of Dr. Martínez' understanding, the change of the CDT code for provided covered services and payment for a Intraoral-Complete Series (including bitewings) (D0210) procedure instead of the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

175.     The above stated practice breaches the terms of the relationship existing between the parties.

176.     The above stated practice has resulted in benefits for MCS, while resulting in detriment to Dr. Martínez.

177.     According to the MCS dental manuals for general dentists and/or fee schedules during the years 2006 through 2011, the amount covered for Intraoral-Complete Series (including bitewings) (D0210) was $41.00, the amount covered for Panoramic Film (D0330) was $35.00, and the amount covered for Bitewings-Two Films (D0272) was $15.00.

178.     The substitution of Intraoral-Complete Series (including bitewings) (D0210) for the Panoramic Film (D0330) and Bitewings-Two Films (D0272), constitutes a savings of $9.00 for the insurance company.

179.     During the term of the relationship, Dr. Martínez submitted an average of 400 claims per year for Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, which when substituted for a Intraoral-Complete Series (including bitewings) (D0210) resulted in an approximate savings of $21,600.00 for the insurance company, amount that should have been paid to Dr. Martínez for the services and/or procedures rendered to patients with MCS plan coverage.

## C. DEFENDANT METLIFE

180.     On or around the year 2001, Dr. Martínez subscribed a dental service provider contract ("hereinafter the "contract") with defendant MetLife, which was prepared and adopted by said insurance company and pursuant to which Dr. Martínez was to provide services to patients covered by an insurance plan issued by MetLife (hereinafter the "patients").

181.	MetLife agreed to pay Dr. Martínez for the services and/or procedures rendered to patients as long as the services or procedures were covered by the patient's plan; the services or procedures were available at the time they were rendered; and Dr. Martínez filed a claim, which included information required by MetLife, in order to process the same (hereinafter "clean claim") and proceed with the corresponding payment.

182.	The claims filed with the insurance company were to be filed in approved company forms and should include the corresponding ADA CDT code and description, together with the approved company fees.

183.	MetLife agreed that upon receipt of a "clean claim", it would pay Dr. Martínez for the services rendered to the patient according the fee schedule approved by said insurance company and within a specified period of time, which period, as of the year 2011, is thirty (30) days.

184.	The terms of the relationship also provides for the procedures to be followed in case of a claim adjustment request.

185.	In addition, pursuant to the terms of the relationship, if the Dentist received precertification from MetLife that the procedure constitutes a covered service, MetLife Dental would accept such determination for payment purposes, subject to dental audit.

186.	The relationship between the parties does not allow MetLife to change, modify and/or substitute the procedures rendered by Dr. Martínez to patients.

187.	During the term of the relationship, Dr. Martínez has complied with the terms agreed upon with MetLife.  MetLife, on the other hand, has failed to comply with its obligation to honor the contracted CDT codes for covered services and to pay Dr. Martínez as agreed to by the parties.

188.	To the best of Dr. Martínez' recollection, since on or around the year 2006, MetLife has incurred in a practice whereby MetLife substitutes procedures and/or services rendered to patients with MetLife insurance plan coverage and billed to the insurance company for other procedures, which are not the contracted covered services rendered and billed by the dental provider, and may be less costly.  This practice violates MetLife's obligation to honor the CDT codes for covered services and pay for said services and/or procedures rendered by the dental provider, in this case Dr. Martínez.

189.	To the best of Dr. Martínez' understanding, substitution of one procedure for another when proceeding with payment of the fees corresponding to the services rendered to patients ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

190.     An example of this practice is the substitution of Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures for the Intraoral-Complete Series (including bitewings) (D0210) procedure.

191.     To the best of Dr. Martínez' recollection, since on or around the year 2006, MetLife has incurred in a practice whereby when receiving a claim from a dental provider, which includes Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, MetLife proceeds to substitute the same for a Intraoral-Complete Series (including bitewings) (D0210) procedure.

192.     Panoramic Film (D0330), Bitewings-Two Films (D0272), and Intraoral-Complete Series (including bitewings) (D0210) procedures are included in MetLife's manuals for dental providers as procedures approved by said insurance company, with separate and distinct CDT codes and fees.

193.     Panoramic radiographs (D0330) is defined as an extraoral projection whereby the entire mandible, maxilla, teeth and other nearby structures are portrayed on a single image, as if the jaws were flattened out.

194.     Bitewing radiographs (D0272) is defined as an interproximal radiographic view of the coronal portion of the tooth/teeth.  A form of dental radiograph that may be taken with the long axis of the image oriented either horizontally or vertically, that reveals approximately the coronal halves of the maxillary and mandibular teeth and portions of the interdental alveolar septa on the same image.

195.     Intraoral radiographs complete series (including bitewings) (D0210) is defined as a radiographic survey of the whole mouth, usually consisting of 14-22 periapical and posterior bitewing images intended to display the crowns and roots of all teeth, periapical areas and alveolar bone.

196.     The Panoramic Film (D0330), Bitewings-Two Films (D0272), and Intraoral-Complete Series (including bitewings) (D0210) procedures entail different services from the dental provider.

197.     To the best of Dr. Martínez' understanding, when substituting Intraoral-Complete Series (including bitewings) (D0210) procedure for the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, the defendant insurance company is not honoring the contracted covered services and not paying the dental provider for the services rendered to the patient and billed to said insurance company.

198.     As a result of the change of the CDT code by the defendant insurance company, the remuneration received by the dental provider for the Intraoral-Complete Series (including bitewings) (D0210) procedure is less than that of the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures.

199.     To the best of Dr. Martínez' understanding, the change of the CDT code for provided covered services and payment for a Intraoral-Complete Series (including

bitewings) (D0210) procedure instead of the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

200.    The above stated practice breaches the terms of the relationship existing between the parties.

201.    The above stated practice has resulted in benefits for MetLife, while resulting in detriment to Dr. Martínez.

202.    According to the MetLife dental manuals for general dentists and/or fee schedules during the years 2008 through 2013, the amount covered for Intraoral-Complete Series (including bitewings) (D0210) is $65.00, the amount covered for Panoramic Film (D0330) was $55.00, and the amount covered for Bitewings-Two Films (D0272) was $20.00.

203.    The substitution of Intraoral-Complete Series (including bitewings) (D0210) for the Panoramic Film (D0330) and Bitewings-Two Films (D0272), constitutes a savings of $10.00 for the insurance company.

204.    During the term of the relationship, Dr. Martínez submitted an average of 48 claims per year for Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, which when substituted for a Intraoral-Complete Series (including bitewings) (D0210) resulted in an approximate savings of $2,880.00 for the insurance company, amount that should have been paid to Dr. Martínez for the services and/or procedures rendered to patients with MetLife plan coverage.

## IV. PLAINTIFF DR. VALMÍN MIRANDA SANTIAGO[5]

### A. DEFENDANT MCS

205.    On or around the year 2000, Dr. Miranda, a solo practitioner, subscribed a dental service provider contract ("hereinafter the "contract") with defendant MCS, which was prepared and adopted by said insurance company and pursuant to which Dr. Miranda was to provide services to patients covered by an insurance plan issued by MCS (hereinafter the "patients"). An amended service provider contract, prepared and adopted by said insurance company, was subscribed on or around May 2006.

206.    MCS agreed to pay Dr. Miranda for the services and/or procedures rendered to patients as long as the services or procedures were covered by the patient's plan; the services or procedures were available at the time they were rendered; and Dr. Miranda filed a claim, which included information required by MCS, in order to process the same (hereinafter "clean claim") and proceed with the corresponding payment.

---

[5] Refer to **Exhibit 4**, Declaration of Dr. Valmín Miranda in support of the claim for breach of contract

207.     The claims filed with the insurance company were to be filed in approved company forms and should include the corresponding ADA CDT code and description, together with the approved company fees.

208.     MCS agreed that upon receipt of a "clean claim", it would pay Dr. Miranda for the services rendered to the patient according the fee schedule approved by said insurance company and within a specified period of time, which period, as of the year 2011, is thirty (30) days.

209.     The terms of the relationship also provides for the procedures to be followed in case of a claim adjustment request.

210.     In addition, pursuant to the terms of the relationship, if the Dentist received precertification from MCS that the procedure constitutes a covered service, MCS would accept such determination for payment purposes, subject to dental audit.

211.     The relationship between the parties does not allow MCS to change, modify and/or substitute the procedures rendered by Dr. Miranda to patients.

212.     During the term of the relationship, Dr. Miranda has complied with the terms agreed upon with MCS.  MCS, on the other hand, has failed to comply with its obligation to honor the contracted CDT codes for covered services and to pay Dr. Miranda as agreed to by the parties.

213.     To the best of Dr. Miranda's recollection, since on or around the year 2003, MCS has incurred in a practice whereby MCS substitutes procedures and/or services rendered to patients with MCS insurance plan coverage and billed to the insurance company for other procedures, which are not the contracted covered services rendered and billed by the dental provider, and may be less costly.  This practice violates MCS' obligation to honor the CDT codes for covered services and pay for said services and/or procedures rendered by the dental provider, in this case Dr. Miranda.

214.     To the best of Dr. Miranda's understanding, substitution of one procedure for another when proceeding with payment of the fees corresponding to the services rendered to patients ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

215.     An example of this practice is the substitution of Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures for the Intraoral-Complete Series (including bitewings) (D0210) procedure.

216.     To the best of Dr. Miranda's recollection, since on or around the year 2003, MCS has incurred in a practice whereby when receiving a claim from a dental provider, which includes Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, MCS

proceeds to substitute the same for a Intraoral-Complete Series (including bitewings) (D0210) procedure.

217.       Panoramic Film (D0330), Bitewings-Two Films (D0272), and Intraoral-Complete Series (including bitewings) (D0210) procedures are included in MCS' manuals for dental providers as procedures approved by said insurance company, with separate and distinct CDT codes and fees.

218.       Panoramic radiographs (D0330) is defined as an extraoral projection whereby the entire mandible, maxilla, teeth and other nearby structures are portrayed on a single image, as if the jaws were flattened out.

219.       Bitewing radiographs (D0272) is defined as an interproximal radiographic view of the coronal portion of the tooth/teeth. A form of dental radiograph that may be taken with the long axis of the image oriented either horizontally or vertically, that reveals approximately the coronal halves of the maxillary and mandibular teeth and portions of the interdental alveolar septa on the same image.

220.       Intraoral radiographs complete series (including bitewings) (D0210) is defined as a radiographic survey of the whole mouth, usually consisting of 14-22 periapical and posterior bitewing images intended to display the crowns and roots of all teeth, periapical areas and alveolar bone.

221.       The Panoramic Film (D0330), Bitewings-Two Films (D0272), and Intraoral-Complete Series (including bitewings) (D0210) procedures entail different services from the dental provider.

222.       To the best of Dr. Miranda's understanding, when substituting Intraoral-Complete Series (including bitewings) (D0210) procedure for the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, the defendant insurance company is not honoring the contracted covered services and not paying the dental provider for the services rendered to the patient and billed to said insurance company.

223.       As a result of the change of the CDT code by the defendant insurance company, the remuneration received by the dental provider for the Intraoral-Complete Series (including bitewings) (D0210) procedure is less than that of the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures.

224.       To the best of Dr. Miranda's understanding, the change of the CDT code for provided covered services and payment for a Intraoral-Complete Series (including bitewings) (D0210) procedure instead of the Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures ultimately constitutes a change of the description of the ADA CDT Code adopted by the insurance company and used to identify the services rendered to a patient.

225.       The above stated practice breaches the terms of the relationship existing between the parties.

226. The above stated practice has resulted in benefits for MCS, while resulting in detriment to Dr. Miranda.

227. According to the MCS dental manuals for general dentists and/or fee schedules during the years 2003 to 2013, the amount covered for Intraoral-Complete Series (including bitewings) (D0210) is $41.00, the amount covered for Panoramic Film (D0330) is $35.00, and the amount covered for Bitewings-Two Films (D0272) is $15.00.

228. The substitution of Intraoral-Complete Series (including bitewings) (D0210) for the Panoramic Film (D0330) and Bitewings-Two Films (D0272), constitutes an approximate savings of $9.00 for the insurance company.

229. During the term of the relationship, Dr. Miranda submitted an average of 7 claims per year for Panoramic Film (D0330) and Bitewings-Two Films (D0272) procedures, which when substituted for a Intraoral-Complete Series (including bitewings) (D0210) resulted in an approximate savings of $693.00 for the insurance company, amount that should have been paid to Dr. Miranda for the services and/or procedures rendered to patients with MCS plan coverage.

## V. PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs very respectfully request that this Honorable Court enter Judgment in favor of Plaintiffs, holding that Defendants have breached the contractual relationships existing with Plaintiffs; ordering Defendants to cease the practices stated forth in the present Second Amended Compliant; imposing damages on the Defendants for breach of contract in an amount no less than those set forth above; order the Defendants to pay costs, interests and reasonable attorney's fees; and granting any other remedy the Court may deem proper in law or equity.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 23rd day of December 2013.

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on December 23, 2013, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to counsel of record.

**ÁVILA, MARTÍNEZ & HERNÁNDEZ, PSC**
**Attorneys for Plaintiff**
The Hato Rey Center
Suite 1105
268 Ponce de León Avenue
San Juan, Puerto Rico 00919

P.O. Box 19-5532
San Juan, PR 00919-5532

Tel: (787) 773-0304
Fax: (787) 773-0307

*s/ Edna Hernández*
**EDNA HERNÁNDEZ**
Email: hernandez@amhlawyers.com
**U.S.D.C. 202703**

*s/ María Luisa Martínez*
**MARÍA LUISA MARTÍNEZ**
Email: martinez@amhlawyers.com
U.S.D.C. 203101

In association with:

**Julio Fontanet Maldonado, Esq.**
200 Manuel V. Domenech Ave.
San Juan, Puerto Rico 00918
Tel. 787-764-1969
Fax: 787-763-6335
Email: jfontanet@inter.edu

**Luis D. Martínez Rivera, Esq.**
PMB 342
405 Esmeralda Ave., Suite 102
Guaynabo, Puerto Rico 00969
Highland Gardens, C-11 Acuarela Street
Guaynabo, Puerto Rico 00969
Tel. 787-720-2333/ 564-2944
Fax: 787-720-2121/ 946-1512
Email: martinezriveralex@gmail.com